Sue A. **BRYANT**

v.

**RIDDLE MEMORIAL HOSPITAL.**

**Civ. A. No. 88–1164.**

United States District Court,
E.D. Pennsylvania.

June 30, 1988.

Charles G. Nistico, Media, Pa., for Sue A. Bryant.

Benjamin Post, Philadelphia, Pa., for Riddle Memorial Hosp.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me defendant Riddle Memorial Hospital's motion to dismiss this action for lack of federal subject matter jurisdiction. For the reasons stated below, I will deny the motion.

### I. *Factual Background*

Plaintiff Sue A. Bryant, an eighty-one year old nursing home patient, was taken to a hospital for treatment of a separated shoulder. She was treated and discharged back to her nursing home within a twenty-four (24) hour time period. Plaintiff filed a complaint in federal court for alleged violations of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, on the basis that she was discharged from defendant Riddle Memorial Hospital before her condition had been "stabilized." Jurisdiction was founded upon federal question jurisdiction under 28 U.S.C. § 1331.

Defendant has filed a motion to dismiss plaintiff's complaint on the grounds that the Emergency Medical Treatment and Active Labor Act does not provide a basis for which federal jurisdiction can be obtained.

### II. *Discussion*

The issue to be decided is whether the provisions of the Emergency Medical Treatment and Active Labor Act (hereinafter the "Act") provide for a private cause of action in federal court. Section 1395dd(d)(3)(A) of the Act states:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

The Act therefore clearly allows civil enforcement of its provisions through a private cause of action. Section 1395dd(d)(3)(C) even provides a two year statute of limitations for the cause of action. What is not apparent, however, is in what forum a party can bring an action; i.e., whether an action can be brought in state or federal court or in both forums.

Because of the Act's inherent ambiguity regarding this particular issue, it becomes necessary to explore the statute's legislative history in order to gain insight as to whether Congress intended to afford parties an opportunity to bring a cause of action arising under the Act in federal court. The history of a statute and the evolution of its language are relevant to the resolution of an ambiguity in the statute. *Magee–Womens Hosp. v. Heckler*, 562 F.Supp. 483, 485 (W.D.1983). The Third Circuit has held that it is always appropriate to look to legislative history to help interpret a statute. *Paskel v. Heckler*, 768 F.2d 540, 543 (3d Cir.1985). Further, in *Berger v. Heckler*, 771 F.2d 1556 (2d Cir.1985), the court held that "where the scope of a statutory provision is not made crystal clear by the language of the provision, it is appropriate to turn to the legislative history of the statute." *Id.* at 1571.

■ Another factor which reinforces the need to resort to the Act's legislative history is the fact that the parties and the court did not locate any case law addressing the issue now presently before the court. In construing a statute in a case of first impression, the court looks first to the language of the statute itself, then to its legislative history. *Bresgal v. Brock*, 833 F.2d 763, 765 (9th Cir.1987). Since the present case is indeed one of first impression, it is particularly appropriate to examine the legislative history of the Act in order to determine whether Congress intended to provide a federal cause of action.

■ An analysis of the legislative history of the Act supports the conclusion that the intent of Congress was to allow an action arising under the Act to be brought in federal court. The Emergency Medical Treatment and Active Labor Act was enacted in order to combat the growing problem of "patient dumping." Patient dumping arose out of the common law "no duty" rule which allowed hospitals to refuse treatment to any patient. *See generally,*

Note, *Preventing Patient Dumping: Sharpening the COBRA's Fangs*, 61 N.Y. U.L.Rev. 1186, 1187 (1986) (authored by Karen I. Treiger). The Act was signed into law on April 7, 1986, as part of the Consolidated Omnibus Budget Reconciliation Act (COBRA). P.L. 99–272. Senator Durenberger, one of the co-sponsors of the Senate version of the measure designed to deal with emergency medical care,[1] expressed the concern that "the practice of rejecting indigent patients in life threatening situations for economic reasons alone is unconscionable." 131 Cong.Rec. S 13,903 (daily ed. October 23, 1985). Likewise, Representative Bilirakis, who is a member of the Energy and Commerce Health Subcommittee and who introduced similar legislation, expressed the notion that "no person should be denied emergency health care or hospital admittance because of a lack of money or insurance." 131 Cong.Rec. H 9503 (daily ed. October 31, 1985).

The Committee on Ways and Means stated the following with regard to Section 124 of H.R. 3128 (responsibilities of medicare hospitals in emergency cases):

> The Committee is greatly concerned about the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance. The Committee wants to provide a strong assurance that pressures for greater hospital efficiency are not to be construed as license to ignore traditional responsibilities and loosen historic standards.

H.R.Rep. No. 241(I), 99th Cong., 1st Sess. 27, *reprinted in* 1986 U.S. Code Cong. & Admin. News 42, 605.

Congress recognized that prior legislation which was enacted to address the problem of patient dumping had proven to be highly inadequate. Although some states have passed laws which ensure that hospitals afford emergency medical care to every emergency patient, regardless of the patient's ability to pay, twenty-eight (28)

states have no such law. 131 Cong.Rec. S 13,904 (daily ed. October 23, 1985) (statement of Sen. Kennedy). Moreover, even in the twenty-two (22) states which do have emergency medical care statutes, enforcement of those laws has been poor. *Id.*

■ The legislative history of the Act contains much evidence of Congress' intent to provide a federal cause of action. A strong indicator of Congressional intent can be found in congressional committee reports. Statements in a congressional committee report recommending adoption of legislation are highly authoritative in determining the purpose of that legislation. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F.Supp. 1190, 1223 (E.D.Pa. 1980). The court in *Zenith Radio* went on to say that "a congressional report represents the considered and collected understanding of those Congressmen involved in drafting and studying proposed legislation." *Id.*

The Committee on Ways and Means, the committee to which H.R. 3128 was referred, stated the following with respect to the bill's emergency medical care provisions:

> Any persons or entity adversely and directly affected by a participating hospital's violation of these requirements may bring an action, *in an appropriate state or Federal district court,* for damages to the person arising from the violation and for other relief as may be appropriate to remedy the violation or deter subsequent violations. (emphasis added).

H.R.Rep. No. 241(I) 99th Cong., 1st Sess. 28, *reprinted in* 1986 U.S. Code Cong. & Admin. News 606.

The Committee on the Judiciary subsequently considered H.R. 3128 as reported by the Committee on Ways and Means. The Judiciary Committee specifically examined the enforcement provisions of the

---

**1.** Amendment to Senate Bill 1730. H.R. 3128 was the corresponding House Bill. The provisions of H.R. 3128 were considered by both the Ways and Means Committee and the Judiciary

Committee. H.R. 3128 was eventually adopted by both the House and the Senate, and became the basis for the current Act.

Act.[2] After concurring with the findings of the Committee on Ways and Means that there was a federal cause of action, the Judiciary Committee conducted a more in-depth analysis of this issue. The Judiciary Committee observed that the language used by the Ways and Means Committee which established a federal cause of action was too vague with respect to which parties could bring an action under the Act and against whom they could bring such action. H.R.Rep. No. 241(III), 99th Cong., 1st Sess., 6, *reprinted in* 1986 U.S. Code Cong. & Admin. News 728. As a result, the Judiciary Committee put forth an amendment which clarified the enforcement provisions. According to the Committee, actions could be brought by an individual patient who is harmed as a direct result of a hospital's failure to screen, stabilize, or properly transfer a patient. *Id.* An action could also be brought by a medical facility which received an improperly transferred emergency patient or a woman in active labor. H.R.Rep. No. 241(III), 99th Cong., 1st Sess., 7, *reprinted in* 1986 U.S. Code Cong. & Admin. News 729. The most convincing evidence comes from the Judiciary Committee's statements that state courts will have concurrent jurisdiction to hear and decide actions brought under this section, and that subsection (d)(3) of the Act allows an aggrieved party to bring an action in federal or state court. *Id.* These provisions, according to the Judiciary Committee, would serve the primary purpose of deterring any violations of the Act's provisions. *Id.*

Finally, the Judiciary Committee also considered an amendment which would have stricken the new federal cause of action. This amendment was defeated by a roll call vote of sixteen to eighteen. H.R. Rep. No. 241(III), 99th Cong., 1st Sess., 8, *reprinted in* 1986 U.S. Code Cong. & Admin. News 730. This is further evidence of the fact that Congress clearly intended to provide a federal cause of action.

The House Conference Report No. 99–453, Dec. 19, 1985, 1986 U.S. Code Cong. & Admin. News 42, also lends strong support to a legislative intent to provide a federal cause of action for violations of the Act. The House bill contained explicit language providing for a federal cause of action, whereas the Senate amendment to the House bill contained no provisions for either a federal cause of action or a more general private civil cause of action. H.R. Conf.Rep. No. 453, 99th Cong., 1st Sess. 475, 476 (1985). Both enforcement measures were reconciled in the Conference agreement, which contained the following: the House bill was adopted, a provision for civil enforcement was included, and the courts were directed to apply the law of the State in which the violating hospital is located when assessing damages to the injured party. *Id.* at 476. It is therefore clear that both the Senate and the House agreed to provide a federal cause of action and to instruct both state and federal courts to apply state law when determining damages.

III. *Conclusion*

The plain language of the Emergency Medical Treatment and Active Labor Act clearly provides a private cause of action to enforce its provisions. After review of the legislative history of the Act, which included extensive consideration by both the House Ways and Means Committee and the Judiciary Committee regarding the Act's provisions for a federal cause of action, as well as an agreement by a joint conference of Senate and House members on the matter, I conclude that the legislative intent of Congress was to provide for a private federal cause of action. This ruling is consistent with the overall purpose of the Act, which establishes a series of federal guidelines which medicare hospitals having emergency medical care facilities must follow to prevent the problem of patient dumping. Therefore, it follows that individuals who allege violations arising under the Act should be afforded an opportunity to seek redress in federal court. For the

---

**2.** The Judiciary Committee exercises oversight responsibilities with reference to federal causes of action. *See* H.R. Report No. 241(III) 99th Cong., 1st Sess., 9, *reprinted in* 1986 U.S. Code Cong. & Admin. News 731.

reasons stated, I will deny defendant's motion to dismiss plaintiff's complaint.