**Willette Faye EVITT, Plaintiff,**

v.

**UNIVERSITY HEIGHTS HOSPITAL, Defendant.**

**No. IP 88–740–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 27, 1989.

Stephen B. Caplin, Indianapolis, Ind., for plaintiff.

David S. Allen, Indianapolis, Ind., for defendant.

DILLIN, District Judge.

## ENTRY

This cause comes before the Court on defendant's motion for summary judgment. For the following reasons, the motion is granted.

### Background

The plaintiff, Willette Faye Evitt (Evitt), brings this action against University Heights Hospital (the Hospital), alleging federal jurisdiction pursuant to 42 U.S.C. § 1395dd(d)(3) (1987). She alleges violations of 42 U.S.C. § 1395dd(a), (b) and (c).

On June 23, 1987, Evitt presented to the emergency department of the Hospital complaining of severe chest pain which increased with inspiration and movement. She arrived by ambulance at approximately 2:30 a.m., and was seen first by nurse David Burns and then by William Kirsch, M.D., who performed an examination. She was released from the Hospital at 3:05 a.m., to her home, with written instructions to stop taking Zydone, to take Dolobid as directed, to call her private physician in the morning, and to apply warmth to the chest area as needed. She was also instructed by Dr. Kirsch to return to the hospital if her condition worsened. The doctor's provisional diagnosis was costochondritis (inflammation of the chest wall); she was considered to be "nonurgent" at the time, and was reported in satisfactory condition upon release.

Evitt returned to the Hospital the same day at 1:50 p.m., with increased chest pain, and was admitted in critical condition. Doctors determined that a recent myocardial infarction (heart attack) had taken place. She was transferred to St. Francis Hospital Center for further treatment including cardiocatheterization and angioplasty.

The plaintiff claims that the Hospital violated 42 U.S.C. § 1395dd(a) during her first visit by not providing for an appropriate screening exam, or in the alternative, that it violated (b) or (c) also during her first visit, by not stabilizing her condition or properly transferring her to another facility.

On June 23, 1987, the Hospital had a Provider Agreement pursuant to 42 U.S.C. § 1395cc, and it had an emergency department where the plaintiff first presented. Jurisdiction is proper under § 1395dd. *Reid v. Indianapolis Osteopathic Medical Hosp.*, 709 F.Supp. 853 (S.D.Ind.1989); *Bryant v. Riddle Memorial Hosp.*, 689 F.Supp. 490, 493 (E.D.Pa.1988).

### Discussion

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir.1984). If the moving party has met this initial burden and the nonmoving party claims the existence of a question of fact, the Court must then determine whether a genuine issue has

been established as to that fact. *Big O Tire Dealers*, 741 F.2d at 163. Summary judgment must be entered against the non-moving party where the nonmoving party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). "In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Title 41 U.S.C. § 1395dd (§ 1395dd) was signed into law on April 7, 1986 as the Emergency Medical Treatment and Active Labor Act (the Act) and is part of the Consolidated Omnibus Budget Reconciliation Act (COBRA). P.L. 99–272. The Act was enacted in order to combat the growing problem of "patient dumping." *Bryant*, 689 F.Supp. at 491; *see generally*, Note, *Preventing Patient Dumping: Sharpening the COBRA's Fangs*, 61 N.Y. U.L.Rev. 1186, 1187 (1986). The term "patient dumping" refers to the practice of hospital emergency departments, despite being capable of providing the needed medical care, transferring patients to other facilities or turning them away because those patients are unable to pay. *Reid*, 709 F.Supp. at 853–54.

The plaintiff claims that in treating her and releasing her to her home, without performing a 12-lead EKG test, the hospital violated the portion of the anti-dumping statute which requires an appropriate medical screening examination. Section 1395dd(a) provides, in relevant part:

> [T]he hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists or to determine if the individual is in active labor (within the meaning of subsection (e)(2) of this section).

The plaintiff's interpretation reaches beyond the purpose of the statute, which is specifically directed toward preventing prospective patients from being turned away for economic reasons. *See Reid*, 709 F.Supp. at 853.

Underlying plaintiff's reading of the screening provision is her implicit complaint that she was misdiagnosed. Following her reasoning, if Dr. Kirsch had suspected she was having a heart attack, he would have ordered a 12–lead EKG, which would have confirmed his suspicions and led to the plaintiff's admission and further treatment. This complaint, rather than focusing on the "dumping" problem, begins by attacking the doctor's provisional diagnosis. Claims regarding diagnosis and treatment lie in the area of medical malpractice, an area traditionally regulated by state law. To adjudicate these issues under the anti-dumping provision would lead to federal preemption not contemplated under this Act.

The Supreme Court has stated that there is a presumption against finding preemption of state law in areas traditionally regulated by the States. *California v. ARC America Corp.*, 490 U.S. ——, ——, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86, 94 (1989). Health and safety matters have traditionally belonged under state law. *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714, 723 (1985).

The statute in question contains no explicit language aimed toward federal preemption of general medical malpractice law. On the contrary, the statute directs that there will he no preemption, except where state law directly conflicts with the statute. 42 U.S.C. § 1395dd(f). The statute presents no direct conflict to general principles of state medical malpractice law. Rather, the federal statute adds specifically tailored hospital requirements directed at the problem of patient dumping.

Taking the plaintiff's argument to its logical conclusion would lead to the result that any patient dissatisfied with an emergency room diagnosis and release could sue the hospital under the anti-dumping provi-

sion. This construction would, in effect, make the Hospital the guarantor of the physicians' diagnosis and treatment irrespective of how reasonable such diagnosis may have appeared at the time of the patient's release, and irrespective of whether the patient was released for lack of funds or similar ulterior motive, on the one hand, or whether she was released simply because the physician after a reasonable examination saw no reason to commit her for hospitalization. We do not believe that the federal statute goes so far.

There is no meaningful dispute as to the facts in this case, as disclosed by the affidavits, deposition, and other discovery materials on file. Contrary to being turned away, this patient was examined in an emergency room well equipped with the necessary tools for screening and diagnosis. She was diagnosed and treated, and instructed to return if her condition worsened. Her condition did become worse, she did return as instructed, and was properly admitted and rediagnosed. Her complaint that the original diagnosis was incorrect obviously states a mere malpractice claim which should be resolved in state court. As a matter of fact, plaintiff has filed a state court malpractice action against both this defendant and the emergency room physician, which action still pends. She will be able to get whatever relief to which she is entitled, if any, in such action.

### Conclusion

It is undisputed that the Hospital had sufficient staff and equipment to perform the appropriate medical screening exam on Evitt. It is also undisputed that she received an examination and treatment which the treating physician deemed appropriate. She has been unable to present evidence which could prove that she was turned away from the Hospital for economic reasons, in violation of 42 U.S.C. § 1395dd. Therefore, summary judgment must be entered in favor of the defendant, without prejudice to her state court action.