## CIRCUIT COURT OF THE CITY OF RICHMOND

Taja Smith, an infant
who sues by her next friend and mother,
Connie Elizabeth Smith,
and Connie Elizabeth Smith, individually

v.

Richmond Memorial Hospital

March 8, 1991

Case No. LS 2441-2

By JUDGE ROBERT L. HARRIS, SR.

This matter comes before the court on defendant's demurrer. The demurrer is sustained without leave to amend.

"A demurrer admits the truth of all material facts that are properly pleaded. According to this rule, the facts admitted are those expressly alleged, those which are impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 384 S.E.2d 752 (1989). Cognizant of these principles, the facts presented are as follows:

On July 18, 1988, plaintiff Connie Smith, a pregnant woman, hereinafter referred to as "mother," became a patient at defendant Richmond Memorial Hospital, hereinafter referred to as "Richmond Memorial." At the time of admission, mother had premature rupture of the membranes, with only a small amount of fluid remaining. The gestational age of Taja Smith, hereinafter referred to as "child," was estimated to be approximately 32.5 to 33 weeks.

Mother remained at Richmond Memorial Hospital from July 18th until July 23rd, at which time she was transferred to Medical College of Virginia Hospital, hereinafter referred to as "MCV." During her stay at Richmond Memorial, her condition deteriorated, and she continued to leak fluid. By 4:30 p.m. on July 22nd, the leakage from her vagina had turned greenish yellow in color, and she experienced abdominal cramping. By 11:45 p.m. that night, the discharge was dark green in color, and she experienced frequent contractions. At midnight on July 22nd, she was dilated one centimeter. Several hours later, she suffered cold chills and a temperature drop to 95.3 degrees F.

At 2:10 a.m. on July 23rd, mother was transferred by ambulance to MCV. Shortly after admission to MCV, her temperature elevated to 100.2 degrees F. A cesarean operation was performed on the mother, and delivery of the child occurred at 9:48 a.m. on July 23rd. The estimated gestational age at birth was determined to be 36 weeks.

The child was placed in the neonatal intensive care unit of MCV. She was resuscitated at birth, but several hours later experienced seizures. MCV continued to treat the child until her discharge on September 6th. Her discharge diagnosis was:

1. Asphyxia neonatorum;
2. Grade Three ventricular hemorrhage with subsequent hydrocephalus;
3. E-Coli Sepsis;
4. Seizure disorder; and
5. Hyperbilirubinemia.

Both mother and child suffered substantial injuries. The child has cerebral palsy. Because of her severe brain damage, she is unable to speak, walk, stand, feed herself, or control her elimination. Subsequent medical treatment was administered to the child for her personal injuries. After delivery, the mother experienced additional complications. Her womb had to be reopened due to infection, and she developed bowel obstruction.

Plaintiff filed a motion for judgment on July 17, 1990, alleging violation of the Emergency Medical Treatment and Women in Active Labor provision of the Consolidated Omnibus Budget Reconciliation Act (COBRA), 42 U.S.C. sect.

1395dd. This statute is often referred to as the "patient dumping law." The motion for judgment contained no other counts.

Under common law, a hospital had no affirmative duty to treat a patient. Hospitals were free to refuse treatment or transfer to another institution those patients that were either unable to pay or were anticipated to be financially unprofitable. That practice was commonly referred to as "patient dumping." In the mid-1980's, public scrutiny was focused on several highly-publicized cases of hospitals dumping patients in dire need of emergency care. In the resulting public outcry for the elimination of this practice, the patient dumping law was passed by Congress.

Compliance with the Act has become a conditional prerequisite of Medicare participation. The provisions of the statute include screening any individual presented to the emergency department and furnishing treatment until the patient is stabilized or delivering the child of a woman in active labor. Additionally, the Act provides for the transfer of a patient to another institution.

The statute includes enforcement mechanisms to ensure compliance. The hospital's provider contract may be terminated or suspended by the Secretary of the Department of Human Services. Additionally, civil penalties may be imposed for violation. Finally, the statute authorizes a private cause of action against the transferring hospital.

Section 1395dd(d)(3)(A) of the Act states:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

The forum available to the private action is not stated in the Act. Therefore, ambiguity exists on the fact of the statute. *Brown v. Lukhard*, 229 Va. 316, 330 S.E.2d 84 (1985). When ambiguity exists in statutory language, legislative history and extrinsic facts may be

reviewed to determine the meaning. *Va. Department of Labor & Industry v. Westmoreland Coal*, 233 Va. 97, 353 S.E.2d 758 (1987).

The Committee on Ways and Means which reviewed H.R. 3128 stated that a private enforcement action may be brought "in an appropriate state or Federal district court . . . ." H.R. Rep. No. 241(I) 99th Cong., 1st Sess. 28, reprinted in 1986 U.S. Code Cong. & Admin. News 606. The Committee on the Judiciary subsequently reviewed the Committee on Ways and Means' report, reaching the same conclusion that state and federal courts should have concurrent jurisdiction. H.R. Rep. No. 241 (III), 99th Cong., 1st Sess., 7, reprinted in 1986 U.S. Code Cong. & Admin. News 729.

Legislative history was cited in *Bryant v. Riddle Memorial Hosp.*, 689 F. Supp. 490 (E.D. Pa. 1988), in support of the conclusion that a private action could be initiated in federal court. The legislative history similarly compels the conclusion that there is concurrent jurisdiction in state court.

Jurisdiction being proper in this court, we shall review the substantive issues presented. Defendant demurs on three grounds. Initially, we shall consider whether plaintiffs were required to give notice of their claim pursuant to Va. Code § 8.01-581.2 prior to initiating a COBRA action.

Pursuant to Va. Code § 8.01-581.2(A), a plaintiff must first serve a Notice of Claim upon the allegedly negligent health care provider before bringing a medical malpractice action. Within sixty days, the health care provider may request a review of the claim by an appointed medical malpractice review panel. If the health care provider requests a panel, suit may not be filed until completion of the review.

Plaintiffs have never mailed a Notice of Claim to defendant and have not coupled a state medical malpractice claim with the COBRA count in the action before the court. The patient dumping count is the sole count in the Motion for Judgment. Defendant has demurred to the action based on the failure to file notice of claim.

Whether the procedural requirements of state medical malpractice claims are applicable to the COBRA claim has been considered with differing results by several federal courts. *Draper v. Chiapuzio*, 755 F. Supp. 331 (D. Ore.

1991); *Toliver v. Culpeper Memorial Hospital, Inc.*, Civil Action No. 90-0501-A, memorandum opinion (E.D. Va. Aug. 30, 1990); *Reid v. Indianapolis Osteopathic Medical Hospital*, 709 F. Supp. 853 (S.D. Ind. 1989).

In *Toliver, supra*, the court determined that application of the Virginia procedural limitations would contravene the intent of the patient dumping law. "Any conclusions by a state review panel convened to explore the possibilities of negligence by a local health care provider are logically irrelevant to the federal equation and directly at odds with its spirit. Congress could not have intended such an absurd result." *Id*. at 7. The court conceded that "the Virginia statute depriving its courts the jurisdiction to hear medical malpractice claims while a review panel is convened to make a preliminary inquiry will not be applicable to the plaintiffs' federal COBRA claims." *Id*. at 8.

The issue presented in the case at hand is analogous to that presented in *Toliver*. In *Toliver*, the court determined that the state statute depriving jurisdiction while a panel was convened was inapplicable to the federal patient dumping cause of action. Similarly, I find that the provision of § 8.01-581.2(A) which provides "No action may be brought for malpractice against a health care provider unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action" is likewise inapplicable. All state imposed limitations of § 8.01-581.2 are inapplicable to this federal cause of action, regardless of whether the patient dumping claim is brought in state or federal court.

Defendant's demurrer alleges that plaintiff's claim is actually one for medical malpractice. I find this argument compelling and sustain the demurrer on this ground.

The legislative history of the Act indicates that it was passed to eliminate the practice of some hospitals of rejecting persons in emergency conditions. The patient dumping law does not generally preempt state medical malpractice law. *Evitt v. University Heights Hospital*, 727 F. Supp. 495, 497 (S.D. Ind. 1989).

The plaintiff's interpretation reaches beyond the purpose of the statute, which is specifically

directed toward preventing prospective patients from being turned away for economic reasons.

Underlying plaintiff's reading of the screening provision is her implicit complaint that she was misdiagnosed. Following her reasoning, if [her physician] had suspected she was having a heart attack, he would have ordered a 12-lead EKG, which would have confirmed his suspicions and led to the plaintiff's admission and further treatment. This complaint, rather than focusing on the "dumping" problem, begins by attacking the doctor's provisional diagnosis. Claims regarding diagnosis and treatment lie in the area of medical malpractice, an area traditionally regulated by state law. To adjudicate these issues under the anti-dumping provision would lead to federal preemption not contemplated under this Act.

*Evitt, supra*, at 497 (citations omitted).

In *Evitt, id.*, and *Stewart v. Myrick*, 731 F. Supp. 433 (D. Kan. 1990), the court concluded that the patient dumping law was not intended to guarantee proper emergency room diagnosis and treatment. I concur that the Act was never intended for this purpose.

Under the facts pleaded in the case at hand, mother was admitted to Richmond Memorial on July 18th and was permitted to stay in the hospital with little treatment for five days. Unfortunately, she was kept at the hospital with improper care. At the time of transfer, the condition of mother and child required treatment beyond the resources available at defendant hospital.

The Act does not insure that emergency conditions arising from medical neglect during a stay in a hospital would be enveloped by the Act. Plaintiff's motion for judgment contains allegations of standard negligence. The crux of the issue presented by plaintiff is that she remained at Richmond Memorial without adequate care. When Richmond Memorial realized the seriousness of mother's condition, they transferred her to MCV. MCV had superior facilities to care for the condition of mother and child. Regretfully, the treatment and transfer to MCV was delayed, causing damage to plaintiffs. Nothing indicates that the

transfer of a short distance was causally connected to the injury.

Under the facts presented, a cause of action for patient dumping is not sufficiently pleaded. Demurrer is sustained without leave to amend. However, once there has been compliance with the necessary procedures, this court will entertain a medical malpractice claim among these parties, provided the statute of limitations has not run.