Sandor **PETROVICS**, Plaintiff,

v.

**PRINCE WILLIAM HOSPITAL CORP.**, Defendant.

**Civ. A. No. 90–1518–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 19, 1991.

Richard Melvin Alvey, Alvey & Alvey, P.C., Woodbridge, Va., for plaintiff.

Thomas Gene Smith, Crews and Hancock, Fairfax, Va., for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court on defendant's motion for summary judgment. In this suit, the plaintiff, Sandor Petrovics, seeks damages pursuant to the federal Examination and Treatment for Emergency Medical Conditions and Women in Active Labor Act, part of the Consolidated Omnibus Budget Reconciliation Act, 42 U.S.C. § 1395dd (Supp.1990) [COBRA]. Mr. Petrovics asserts that when he sought medical treatment at the emergency room of the Prince William Hospital, the hospital failed to provide an adequate medical screening examination and failed to provide the necessary stabilizing treatment as required by COBRA. The complaint charges that as a direct and proximate result of Prince William Hospital's failure to render the care required under federal law, the plaintiff has endured great physical pain and suffering and has incurred medical and hospital expenses. Prince William Hospital argues that the plaintiff has not set out a case under COBRA and that plaintiff's only possible claim is a state law claim for misdiagnosis.

Petrovics was presented to the Prince William Hospital emergency room on October 16, 1989. He complained of a sharp pain between his shoulder blades that started the previous evening. He also indicated that he was having some respiratory distress. In his previous medical history, he stated that he had had a back injury. In his affidavit, plaintiff claims that he also told the emergency room doctor that he had had pneumonia before and that his current pain felt similar.

Because he was complaining of some respiratory distress, the nurse took his vital signs and administered an oxygen saturation test. Petrovics did not have a fever and the oxygen saturation of his lungs on room air was ninety-eight percent.

Thereafter, the doctor examined Petrovics and a battery of tests were administered including chest x-rays. After a preliminary reading of the x-rays, the doctor determined that his condition was not an emergency condition and diagnosed plaintiff as suffering from a recurrent back pain. Plaintiff was examined and tested for a period of three hours and forty minutes from 8:05 a.m. until 11:45 a.m.

After plaintiff was discharged, the x-rays were sent to the radiologist for further review. Upon review, the radiologist noted an abnormality in the chest x-ray and suggested that the hospital call the plaintiff to return for further testing. He was called on October 19, 1989 and advised that, although there was no emergency, he should return for further testing. He did not return and on October 22, 1989 he presented himself at Fairfax Hospital where he was diagnosed as having pneumonia. Because there are no material facts in dispute, this case is proper for resolution on summary judgment.

The Emergency Medical Treatment and Active Labor Act [Act], was enacted by Congress as a result of concerns about patient dumping.

> The Committee is greatly concerned about the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance. The Committee is most concerned that medically unstable patients are not being treated appropriately.... The Committee wants to provide a strong assurance that pressures for greater hospital efficiency are not to be construed as license to ignore traditional community responsibilities and loosen historic standards.

H.R.Rep. No. 99–241, Part I, 99th Cong., 1st Sess. 27, *reprinted in* 1986 U.S.Code Cong. & Admin.News 42, 605.

In order to eliminate patient dumping, the Act imposes certain duties on hospitals:

(a) Medical screening requirement

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request

is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition ... exists or to determine if the individual is in active labor.

(b) Necessary stabilizing treatment for emergency medical conditions and active labor

(1) In general

If any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition or is in active labor, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and treatment as may be required to stabilize the medical condition ... or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(a)–(b)(1) and (2) (Supp. 1990).[1] Although the Act imposes these duties on the hospital, "[a] cause of action under [COBRA] is not analogous to a state medical malpractice claim because it creates liability for a refusal to treat, which state malpractice law does not." *Thornton v. Southwest Detroit Hospital,* 895 F.2d 1131, 1133 (6th Cir.1990).

There are very few cases which have interpreted the Act and the cases are split as to whether a claim under the Act may only be set out if the complaint alleges that the denial of treatment was based on an inability to pay. *See Stewart v. Myrick,* 731 F.Supp. 433 (D.Kan.1990) and *Evitt v.*

*University Heights Hosp.,* 727 F.Supp. 495 (S.D.Ind.1989) (These two cases held that there must be allegations that one was turned away based on their economic condition.); and *DeBerry v. Sherman Hosp. Ass'n,* 741 F.Supp. 1302 (N.D.Ill.1990) and *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266 (6th Cir.1990) (These two cases held that the plaintiff could state a claim under the Act where the patient did not allege that the denial of treatment was based on the economic condition of. the patient.). The court does not decide this issue because the facts of this case as a matter of law do not establish that Prince William Hospital neglected its duties under the Act.

The facts do not support a finding that the Prince William Hospital violated its duties under the Act. The Act requires that patients who enter the hospital are to receive appropriate medical screening. As the Sixth Circuit has held, "[u]nder the circumstances of the act, 'appropriate' can be taken to mean care similar to care that would have been provided to any other patient, or at least not known by the providers to be insufficient or below their own standards." *Cleland,* 917 F.2d at 271.

In *Cleland* the plaintiffs took their son to the emergency center because he was complaining of abdominal cramps and vomiting. The doctor at the center examined the boy and diagnosed him as suffering from influenza. After four hours at the hospital, the boy was discharged with instructions for his care. Later that evening, the boy was brought back to the center because he was experiencing cardiopulmonary arrest. He died about an hour later. His condition had been misdiagnosed as influenza when he was actually suffering

---

1. Emergency medical condition is defined as: ... a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

  (A) placing the patient's health in serious jeopardy,

  (B) serious impairment to bodily functions, or

  (C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1395dd(e)(1) (Supp.1990).

  Stabilization of an emergency medical condition is defined as:

  ... provid[ing] such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from the transfer of the individual from a facility.

42 U.S.C. § 1395dd(e)(4)(A) (Supp.1990).

from intussusception, a condition where the intestine telescopes within itself. *Id.*

When examining these facts, the court looked at the appropriateness of the treatment at the time of admittance to the emergency room and *not* in hindsight. *Id.* In that case the court found that there was not the slightest indication that this outcome would have been any different for any other patient. The court held that the complaint simply did not allege any inappropriateness in the medical screening. Furthermore, the court held that the patient was stabilized at that time. There had been no indications by either the patient or his parents that his condition was worsening or that he was in acute distress. "In the hospital's opinion, the patient was stable, and they would have believed that a patient with any differing characteristics would have been stable." *Id.*

Similarly, the plaintiff in this case has not alleged any inappropriateness in the screening that he received such that any other patient would have received different screening. Upon entry to the emergency room, the nurse took the vital signs of the plaintiff, including an oxygen saturation test. The results indicated that the plaintiff had no fever and had a ninety-eight percent lung saturation on room air. Because the hospital feared that the plaintiff might be having a heart attack, he was immediately placed on oxygen and an i.v. was administered.

To further diagnose the plaintiff's condition, the doctor in the emergency room ordered a battery of tests including chest x-rays. After the tests were completed, the doctor determined that the plaintiff was not suffering from an emergency medical condition, but was suffering from recurrent back pain. "If the emergency nature of the condition is not detected, the hospital cannot be charged with failure to stabilize a known emergency condition." *Id.* and see *Thornton v. Southwest Detroit Hosp.*, 895 F.2d at 1134.

Since there was no emergency condition, the Prince William Hospital discharged plaintiff after three hours and forty minutes of examination with instructions regarding medications and treatment. The hospital even called plaintiff three days later to suggest that he return for further testing regarding the abnormality on the x-ray. There is no indication that this was inappropriate treatment.

Furthermore, at the time plaintiff was discharged, there is no indication in the record that his condition was worsening. To Prince William Hospital, his condition was stable and any other patient with the same diagnosis would also have been considered stable. Although plaintiff was diagnosed with pneumonia six days later, that condition was not diagnosed nor detected when the plaintiff was treated at Prince William Hospital on October 16, 1989. Therefore, the hospital did not neglect its duties under the Emergency Medical Treatment and Active Labor Act. If there is any claim at all based on these facts, it is only a claim for misdiagnosis under state law.

An appropriate order shall issue.

### ORDER

This matter came before the court on the defendant's motion for summary judgment. For the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that the defendant's motion for summary judgment is GRANTED.