**Doris ABERCROMBIE, Theresa Bookout, Ed Pruitt, Eddie Pruitt, Jerry Pruitt, Lewis Pruitt, Ricky Pruitt, Ronnie Pruitt, Terry Pruitt, and Wanda Robay, individually, and as surviving children and next of kin of Eileen W. Pruitt, deceased, Plaintiffs–Appellants,**

v.

**OSTEOPATHIC HOSPITAL FOUNDERS ASSOCIATION, an Oklahoma corporation, d/b/a Oklahoma Osteopathic Hospital, Roy Guthrie, D.O., and Thomas Schooley, D.O., Defendants–Appellees.**

No. 90–5184.

United States Court of Appeals, Tenth Circuit.

Dec. 5, 1991.

Matt A. Melone (Jerry M. Melone of Melone–Shepherd–Schroeder–Allred–Thiessen–Melone, with him on the brief), Tulsa, Okl., for plaintiffs-appellants.

Douglas W. Golden OBA # 3433 (Dan A. Rogers OBA # 7717 of Rogers, Honn & Associates, with him on the brief), Tulsa, Okl., for defendant-appellee Roy D. Guthrie, D.O.

Stephen J. Rodolf OBA # 7702 (John D. Clayman OBA # 11790 of Barkley, Rodolf, McCarthy & Rodolf, with him on the brief), Tulsa, Okl., for Thomas Schooley, D.O. and Oklahoma Osteopathic Hosp.

Before EBEL and McWILLIAMS, Circuit Judges, and JENKINS, District Judge.[*]

McWILLIAMS, Circuit Judge.

This case concerns the Emergency Medical Treatment and Active Labor Act, sometimes referred to as COBRA. 42 U.S.C. § 1395dd, *et seq.*[1]

Eileen W. Pruitt, age 68, began to experience chest pain in the early morning hours of February 16, 1988, and was taken to the Osteopathic Hospital Founders Association

---

[*] Honorable Bruce S. Jenkins, Chief Judge, United States District Court for the District of Utah, sitting by designation.

**1.** § 1395dd was enacted as a part of the Consolidated Omnibus Budget Reconciliation Act of 1986, which gives rise to the acronym COBRA. Pub.L. No. 99–272, § 9121, 100 Stat. 82, 164–67 (1986).

in Tulsa, Oklahoma at three o'clock a.m. on February 16, 1988. She was examined by Dr. Thomas Schooley, D.O. and Dr. Roy Guthrie, D.O. An EKG was given. A diagnosis of anterior chest wall syndrome was made, and at about five o'clock a.m. on February 16, 1988, Mrs. Pruitt was sent home with directions to contact her family physician if the pain persisted.

Mrs. Pruitt was examined by her family physician, Dr. Carson Todd, D.O., at seven-thirty a.m. on February 16, 1988. After administering an EKG, Dr. Todd's diagnosis of Mrs. Pruitt was that she was experiencing an acute, extensive and well-developed transmural inferior myocardial infarction. Mrs. Pruitt was again taken to Osteopathic Hospital on February 16, 1988. On February 17, 1988, Mrs. Pruitt suffered a massive coronary, and she died in the Hospital on March 11, 1988, the cause of death being listed as myocardial infarction.

On May 9, 1989, Mrs. Pruitt's ten surviving children brought the present action in the United States District Court for the Northern District of Oklahoma, naming as defendants the Hospital and Drs. Schooley and Guthrie and alleging that Drs. Schooley and Guthrie were acting as agents, servants and employees of the Hospital. In their complaint the plaintiffs alleged that on February 16, 1988, their mother presented herself at the Hospital's emergency department complaining of acute symptoms of chest, neck and shoulder pain, and that in connection therewith the defendants "failed to appropriately screen, stabilize and diagnose" her condition and caused her to be transferred home when her condition was not "stabilized." The foregoing claim was based on the provisions of CO-BRA, which the plaintiffs alleged imposed "strict liability" on the defendants based on violations of federal standards concerning emergency hospital treatment as set forth in 42 U.S.C. § 1395dd.

Plaintiffs also asserted a pendent wrongful death claim, and, as a basis therefor, alleged that the defendants were careless and negligent in their care and treatment of Mrs. Pruitt. The plaintiffs sought damages in the amount of $2,000,000 and punitive damages in the amount of $1,000,000. By separate answers, the three defendants, *inter alia*, denied liability.

A pretrial conference order contained the following:

Federal jurisdiction is invoked upon the ground: The defendants have and are under and subject to "strict liability" for their violation of federal law pursuant to 42 U.S.C. § 1395dd, *et seq.*, which is known as the Cobra Statute.

A jury trial resulted in verdicts in favor of all defendants, and judgments in favor of the defendants were duly entered.

Plaintiffs filed a timely motion for a new trial in which they alleged that the district court erred in giving Instruction No. 21 and in connection therewith also erred in refusing to give plaintiffs' tendered instruction nos. 19, 20, and 23. More will be said about the instructions later. In the motion for a new trial, the plaintiffs did not challenge the propriety of giving special interrogatories to the jury by the district court, although the statement was made that the special interrogatories, and the answers thereto, did not cure the error in instruction no. 21. More, too, will be said about the special interrogatories later. In any event, the motion for a new trial was denied, and plaintiffs appeal therefrom.

After both the plaintiffs and the defendants rested their case, counsel and the district court conferred on instructions. The plaintiffs tendered their instruction nos. 19, 20, and 23, which are attached to this opinion as Attachments A, B, and C, respectively. Attachment D is instruction no. 21, which the district court initially proposed to give the jury. Plaintiffs had no objection to that instruction no. 21. However, counsel for the Hospital and Dr. Schooley objected to the proposed instruction no. 21, arguing that under *Thornton v. Southwest Detroit Hospital,* 895 F.2d 1131 (6th Cir.1990), the word "or" appearing in line 26 of the proposed instruction no. 21 (Attachment D) should be replaced with the word "and." Counsel for Dr. Guthrie apparently joined in that objection and also in connection therewith spoke as follows: "I believe the instruction should read that the

patient was negligently discharged when she was in an unstable condition. . . . "

In response to defendants' objections to the proposed instruction no. 21 counsel for plaintiffs stated that they believed the "statute itself is clear on the issue." The district court then took the matter under advisement.

Prior to closing argument, the district judge advised counsel of the changes he was going to make in the proposed instructions. In this regard, the district court announced that it was sustaining the defendants' objections to proposed instruction no. 21 and would replace the word "or" with the word "and," and that the "word 'negligently' would be inserted before the word 'discharged.' " In connection with these changes, the district court stated that "[t]he plaintiffs' objection to that is noted." Attachment E is instruction no. 21 as it was given to the jury.

After closing argument, but before the instructions were read to the jury, counsel for plaintiffs stated that "[i]n case our objection to instruction number 21 was not clear yesterday, we do wish to make the record concerning instruction number 21 which the Court intends to give the jury this morning." The district court, noting that closing argument had already been made, thought that any expansion by the plaintiffs on their objection to instruction no. 21 was not timely. Plaintiffs' counsel was nonetheless permitted to "make the record," and counsel objected to replacing the word "or" with the word "and" and to inserting the word "negligently" in the instruction. The district judge stated that he didn't recall whether counsel's objection made the previous day to the changes in instruction no. 21 was any different from the objection then being made, but opined that only the objection made the previous day was "timely." The district judge did observe that on the preceding day he had "noted" plaintiffs' objections to the modification of instruction no. 21.

On appeal, plaintiffs argue that instruction no. 21, as it was changed upon objec-

tions by the defendants, incorrectly stated the applicable law, and that their tendered, but rejected, instruction nos. 19, 20, and 23 correctly stated the law on the subject matter. Counsel states that instruction no. 21 instructed the jury that before it could find for the plaintiffs it must find that the Hospital did not provide an appropriate medical screening examination *AND* that Mrs. Pruitt was "negligently" discharged in an unstabilized condition. Counsel states that under COBRA the plaintiffs were not required to prove both inappropriate screening *AND* premature discharge and that proof of either entitled the plaintiffs to recover. Further, counsel argues that it was error to inject the issue of negligence into plaintiffs' COBRA claims.[2]

■ Defendants first argue that plaintiffs' objection to instruction no. 21 did not comply with Fed.R.Civ.P. 51, and that under the rule plaintiffs may not now assign as error the giving of instruction no. 21. We disagree with that argument. In the first place, plaintiffs themselves had no objection to instruction no. 21 as it was originally written, and it was the defendants who objected thereto. When the district court upheld defendants' objections and changed the word "or" to the word "and," and inserted the word "negligently" into the instruction, the district court "noted" that the plaintiffs objected to the changes. Further, after oral argument, but before instructing the jury, counsel more specifically advised the district court of his objection to the changes in instruction no. 21.

Rule 51 provides that a party may not assign as error the giving of an instruction unless he states distinctly the matter objected to and the grounds of the objection "before the jury retires to consider its verdict." Our reading of the record before us leads us to conclude that plaintiffs' counsel did comply with the rule. Further, it appears to us that both the parties and the district court clearly knew just what was in dispute. Accordingly, we will consider on its merits plaintiffs' challenge to instruc-

---

**2.** The question of negligence, or not, was an issue in plaintiffs' pendent state claim based on medical negligence, and the jury was instructed concerning plaintiff's pendent claim.

tion no. 21. In so doing, it should be emphasized that at this point we are only concerned with plaintiffs' COBRA claims, and not with plaintiffs' pendent claim for wrongful death.

■ COBRA applies to any hospital that receives Medicare payments and has an emergency department. Enacted to prevent the practice by private hospitals of inappropriately transferring, or "dumping," patients, COBRA imposes requirements on the hospital. One requirement is that when an individual presents himself at a hospital and requests examination and treatment for a medical condition, the hospital "must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition exists." 42 U.S.C. § 1395dd(a). Another requirement is that if the patient has an emergency medical condition which has not been stabilized, the patient, subject to certain exceptions not here applicable, may not be transferred out of the hospital. 42 U.S.C. § 1395dd(c). In the instant case, the plaintiffs alleged both an improper screening examination and a transfer before stabilization.

42 U.S.C. § 1395dd(d)(2)(A) concerns "civil enforcement" and provides as follows:

(A) Personal Harm.

Any individual who suffers personal harm as a direct result of a participating hospital's *violation of a requirement* of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such other equitable relief as is appropriate (emphasis added).

Although counsel has argued that instruction no. 21 required plaintiffs to show both improper screening and premature discharge before they could prevail, such is not really correct. The third paragraph of instruction no. 21 advises the jury that if

they find that the Hospital did not provide appropriate medical screening examination and if they further find that Mrs. Pruitt was negligently discharged in an unstabilized condition, they must find for the plaintiffs. The fourth paragraph of that same instruction states the reverse of the third paragraph, i.e., if the jury finds that the Hospital provided an appropriate emergency medical screening examination and did not discharge her in an unstabilized condition, they must find for the Hospital. Both paragraphs, when read literally, are correct, i.e., if defendants did not provide an appropriate screening examination and discharged Mrs. Pruitt in an unstabilized condition, plaintiffs must prevail. And if, on the contrary, the Hospital did provide an appropriate screening examination and discharged her in a stabilized condition, then the Hospital must prevail. The problem is that the instruction does not, in so many words, cover the situation where the Hospital complies with one of COBRA's requirements, but violates the other. The jury should have been instructed that if the Hospital violated *either* COBRA requirement, the plaintiffs should prevail. However, the language of instruction no. 21 is arguably subject to the interpretation that the plaintiffs must show a violation of *both* of COBRA's requirements before they may prevail.

In any event, instruction no. 21 did not advise the jury that if the defendants violated any requirement of COBRA, they should find for the plaintiffs. Plaintiffs' tendered instruction nos. 19, 20, and 23 correctly state the law on this matter, namely that the jury should find for the plaintiffs if the defendants failed to provided Mrs. Pruitt with an appropriate medical screening examination *or* if the defendants sent her home in an unstabilized condition.[3]

■ Further, we believe that the district court's insertion of the word "negligently" into instruction no. 21 was error. COBRA provides for civil monetary fines against a

---

3. *Thornton v. Southwest Detroit Hospital,* 895 F.2d 1131 (6th Cir.1990), relied on by the defendants-appellees, does not support couching instruction no. 21 in the conjunctive, rather than the disjunctive. Our reading of *Thornton* indicates the only COBRA requirement there involved was whether the patient was discharged in a stabilized condition, and the requirement that there be an appropriate medical screening examination was not involved.

participating hospital, and a physician acting on behalf of such hospital, who "negligently" violate any "requirement" of the statute. However, the word "negligently" does not appear in that section of the statute providing for civil enforcement by an individual who has suffered personal harm as a result of the hospital's violation of a requirement of the statute. The omission is significant. Congress could have added the word "negligently" in its civil enforcement provision, but it chose not to. In such circumstance, the courts should not rewrite the civil enforcement provision.

Further, in 42 U.S.C. § 1395dd(a) and (c), which set forth the two "requirements" with which we are here concerned, the word "negligently" is not used. We agree with plaintiffs that these two requirements impose a "strict liability" on a hospital which violates those requirements. All of which would appear to be in accord with *Stevison v. Enid Heath Systems, Inc.,* 920 F.2d 710, 713 (10th Cir.1990), where we stated that 42 U.S.C. § 1395dd(a) contains "mandatory language" whereby the hospital "must" provide for medical screening if a request therefor is made, and that the statute sets forth a "strict liability standard," citing *Reid v. Indianapolis Osteopathic Medical Hospital, Inc.,* 709 F.Supp. 853, 855 (S.D.Ind.1989).

For the reasons stated, we conclude that instruction no. 21 was not full and complete, and that plaintiffs' tendered, but rejected, instruction nos. 19, 20, and 23 more accurately state the law on plaintiffs' COBRA claim. However, there remains the question of whether this error, under the circumstances, was only harmless error.

■ The form of verdict given the jury is set forth in its entirety as Attachment F, which is a copy of the verdict returned by the jury. The minor objections made by counsel to the form of that verdict have no present pertinency. Although the record before us does not disclose just what precipitated the following, it does appear that while the jury was deliberating, the district court, with the consent of counsel, determined that when the jury returned its verdict, it would be given some special interrogatories to answer. When the jury returned its verdict in favor of all defendants, those special interrogatories were given the jury, which, in due time, returned its answers thereto. Attachment G sets forth the six interrogatories given the jury and the answers of the jury thereto.

The first four interrogatories concern the negligence, if any, of Drs. Schooley and Guthrie in their care and treatment of Mrs. Pruitt and would appear to relate to the plaintiffs' wrongful death claim based on Oklahoma law. The fifth and sixth interrogatories relate to plaintiffs' COBRA claims. The fifth interrogatory asked the jury whether it found by a preponderance of the evidence that the Hospital provided an appropriate medical screening examination of Mrs. Pruitt within the capability of its emergency department to determine whether an emergency condition existed. This interrogatory tracks the language of the statute. 42 U.S.C. § 1395dd(a). The jury answered the fifth interrogatory "yes," meaning that the Hospital had complied with that particular requirement that there be an appropriate medical screening examination.

The sixth interrogatory asked the jury whether it found by a preponderance of the evidence that the Hospital discharged Mrs. Pruitt when she was in an unstabilized condition. We note that this interrogatory does not use the word "negligently" and tracks the language of the statute. 42 U.S.C. § 1395dd(c). The jury answered the sixth interrogatory "no," meaning that the Hospital had not discharged Mrs. Pruitt in an unstable condition.

Counsel for defendants argue that any error in instruction no. 21 was subsequently cured by the special interrogatories and the jury's answers thereto, which, as to the fifth and sixth interrogatories do not use the word "negligently," and, on the contrary, were couched in the exact language of COBRA. Counsel contends that the answers given by the jury clearly indicated that the Hospital, which was only acting through Drs. Schooley and Guthrie, did not violate either of the COBRA requirements

on which plaintiffs based their COBRA claims. We agree.

This all boils down to whether we are going to simply ignore the jury's answers to the fifth and sixth interrogatories, or accept those answers and give them force and effect. We choose the latter course. We reject the suggestion by plaintiffs in this court that the special interrogatories violated Fed.R. of Evid. 606(b). This is not an attempt to impeach a verdict after the jury has been discharged. It should be emphasized that in the district court the plaintiffs made no objections to giving these special interrogatories to the jury. All parties were taking a risk in agreeing to the giving of special interrogatories, and in the district court all were willing to take that risk. The real question, as indicated, is whether we are going to ignore the jury's answers to the fifth and sixth interrogatories, or accept their answers and give them force and effect. The two answers were a clear and unequivocal declaration that the defendants had made an appropriate initial medical screening examination and that Mrs. Pruitt was not discharged in an unstable condition.

Plaintiffs do not challenge the jury's verdict in favor of the defendants on the ground that it is against the weight of the evidence. The evidence was conflicting on the crucial issues of adequate screening and premature discharge. Plaintiffs' evidence tended to show that the defendants should have detected Mrs. Pruitt's heart attack in the examination at three o'clock on February 16, 1988, whereas defendants' evidence tended to show that Mrs. Pruitt's heart attack came sometime *after* their examination. The evidence of premature discharge was also in sharp dispute. The jury by its answers to interrogatories five and six has rejected plaintiffs' COBRA claim.

Judgment affirmed.

## ATTACHMENT A

*Plaintiffs' Requested Jury Instruction No. 19*

The Defendant hospital is required by law to provide an appropriate medical screening examination within the capabilities of Defendant hospital emergency department to determine whether or not an emergency medical condition exists.

If you find that the Defendant hospital emergency department did not provide an appropriate medical screening examination within the capabilities of Defendant hospital emergency department, then you must find for the Plaintiffs and award damages directly and proximately caused by such failure.

## ATTACHMENT B

*Plaintiffs' Requested Jury Instruction No. 20*

If you find that at the time Eileen Pruitt was discharged from the emergency department of Defendant hospital Eileen Pruitt was in an unstable condition, then you must find for the Plaintiffs and award damages directly and proximately caused by such failure.

## ATTACHMENT C

*Plaintiffs' Requested Jury Instruction No. 23*

The law of the United States provides that if any individual comes to an emergency department and requests examination or treatment for a medical condition the hospital must provide an appropriate medical screening examination within the capability of the hospital emergency department to determine whether or not an emergency medical condition exists.

An emergency medical condition is defined as a medical condition manifesting itself by acute symptoms of sufficient severity that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily function, or serious dysfunction of any bodily organ or part.

Further, the hospital and its physicians are required not to discharge a patient who is in an unstable condition.

If you find that Defendant hospital and physicians failed to comply with the law of

the United States, then you must find in favor of the Plaintiffs and award damages as permitted by law. Even if you find that Defendants did comply with the laws of the United States, then you are advised under the law of the State of Oklahoma that a physician and hospital owe certain duties to Eileen Pruitt as instructed by this Court.

If you find that Eileen W. Pruitt's death was caused by the negligence of one or more of the Defendants, then you are instructed to find in favor of the Plaintiffs, for and on behalf of Eileen W. Pruitt, deceased, and the Plaintiffs, individually, and against such Defendant or Defendants. If you fail to so find, then your verdict shall be against the Plaintiffs and in favor of the Defendants on the issue of negligence.

## ATTACHMENT D

### Original Instruction No. 21

In the case of a hospital that has a hospital emergency department, if any individual comes to the emergency department and a request is made on the individual's behalf for examination or treatment of a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition exists.

The term "emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain), such that the absence of immediate medical attention could reasonably be expected to result in—

(A) Placing the patient's health in serious jeopardy,

(B) Serious impairment to bodily functions, or

(C) Serious dysfunction of any bodily organ or part.

If you find that the hospital did not provide an appropriate medical screening examination *or* if you find that Eileen Pruitt *was discharged* at a time she was in an unstable condition, then you must find in favor of Plaintiffs.

However, if you find that the hospital provided an appropriate emergency medical screening examination for Eileen Pruitt, and did not discharge her in an unstable condition, then you must find in favor of the hospital (emphasis added).

## ATTACHMENT E

### Instruction No. 21 As Given the Jury

In the case of a hospital that has a hospital emergency department, if any individual comes to the emergency department and a request is made on the individual's behalf for examination or treatment of a medical condition, the hospital *must* provide for an appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition exists.

The term "emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(A) Placing the patient's health in serious jeopardy,

(B) Serious impairment to bodily functions, or

(C) Serious dysfunction of any bodily organ or part.

If you find that the Hospital did not provide an appropriate medical screening examination *and* that Eileen Pruitt was *negligently* discharged at a time she was in an unstable condition, then you must find in favor of plaintiffs.

However, if you find that the Hospital provided an appropriate emergency medical screening examination for Eileen Pruitt, and did not discharge her in an unstable condition, then you must find in favor of the Hospital (emphasis added).

## ATTACHMENT F

## VERDICT FORM

We the jury in the above-entitled case, duly empaneled and sworn upon our oaths,

find as follows. (Place an "x" next to either Option Number 1 or Option Number 2. If you place an "x" next to Option Number 2, no further entries should be made on this form other than dating and signing it. If you place an "x" next to Option Number 1, complete the rest of the form in accordance with your findings.)

Option Number 1 _____ In favor of plaintiffs and against the following defendants:

(Place a "Yes" in the blank next to a defendant's name if you find that defendant liable, and a "No" in the blank next to a defendant's name if you find the defendant not liable.)

_____ Dr. Roy Guthrie

_____ Dr. Thomas Schooley

_____ Oklahoma Osteopathic Hospital (If you find *either* Dr. Guthrie or Dr. Schooley liable, this blank should be filled in "Yes." If you found *neither* Dr. Guthrie nor Dr. Schooley liable, this blank should be filled in "No.")

And we award the following actual or compensatory damages:

| | | |
|---|---|---|
| A. Doris Abercrombie | $ | _____ |
| B. Theresa Bookout | $ | _____ |
| C. Ed Pruitt | $ | _____ |
| D. Eddie Pruitt | $ | _____ |
| E. Jerry Pruitt | $ | _____ |
| F. Lewis Pruitt | $ | _____ |
| G. Ricky Pruitt | $ | _____ |
| H. Ronnie Pruitt | $ | _____ |
| I. Terry Pruitt | $ | _____ |
| J. Wanda Robay | $ | _____ |
| K. Pain and Suffering of Eileen W. Pruitt | $ | _____ |
| L. Medical and burial expenses of Eileen W. Pruitt | $ | _____ |

Further, in our discretion, we award the following punitive damages against the defendant Oklahoma Osteopathic Hospital in the amount of $_____.

Option Number 2 **X** In favor of defendants and against plaintiffs such that plaintiffs take nothing by way of their complaint.

## ATTACHMENT G
### SPECIAL INTERROGATORIES

Ladies and Gentlemen: The following questions are known as special interrogatories. Please answer these questions *after* you have completed your verdict forms. They will help us interpret your verdict. Again, this form is for informational purposes only and should be filled out after you have completed your verdict form.

1. Do you find by a preponderance of the evidence that Dr. Schooley provided substandard, that is, negligent, care to Eileen Pruitt?

___ Yes

**X** No

2. If you answered "yes" to number 1, answer this question, otherwise, skip this question: Do you find Dr. Schooley's negligence was a direct cause of Eileen Pruitt's injuries?

___ Yes

___ No

3. Do you find by a preponderance of the evidence that Dr. Guthrie provided substandard, that is, negligent care to Eileen Pruitt?

___ Yes

**X** No

4. If you answered "yes" to number 3, answer this question, otherwise, skip this question: Do you find Dr. Guthrie's negligence was a direct cause of Eileen Pruitt's injury.

___ Yes

___ No

5. Do you find by a preponderance of the evidence that Oklahoma Osteopathic Hospital provided an appropriate medical screening examination within the capability of the emergency department, of Eileen Pruitt, to determine whether an emergency medical condition existed?

**X** Yes

___ No

6. Do you find by a preponderance of the evidence that Oklahoma Osteopathic Hospital discharged Eileen Pruitt when she was in an unstable condition?

___ Yes

<u>X</u>  No