Derreck Lee URBAN, minor child, By and Through his natural father and mother and next friends, David D. URBAN and Rosalind Marie Urban; David D. Urban, individually; Rosalind Marie Urban, individually, Plaintiffs–Appellants,

v.

William T. KING, M.D.; Jay S. Schukman, M.D.; Joseph Gateno, M.D.; Central Kansas Medical Center, Great Bend, Kansas, Defendants–Appellees.

No. 93–3331.

United States Court of Appeals, Tenth Circuit.

Dec. 20, 1994.

priate" refers to "the motives with which the hospital acts.").

Michael S. Holland, Russell, KS, for plaintiffs-appellants.

Steven C. Day of Woodard, Blaylock, Hernandez, Roth & Day, Wichita, KS, for defendants-appellees.

Before BRORBY, SETH and LAY,* Circuit Judges.

* The Honorable Donald P. Lay, Senior Circuit Judge, Eighth Circuit, sitting by designation.
1. § 1395dd. Examination and treatment for emergency medical conditions and women in labor
  (a) Medical screening requirement
    In the case of a hospital that has a hospital emergency department, if any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination....
  (b) Necessary stabilizing treatment for emergency medical conditions and labor
    (1) In general
    If any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide....
    ....

BRORBY, Circuit Judge.

This case involves the interpretation of a subsection of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (1992).[1] The district court held on a summary judgment motion that § 1395dd(c) requires a hospital have actual knowledge of an emergency medical condition before liability attaches pursuant to that section of the statute. We agree with the district court's interpretation of law and therefore affirm its grant of summary judgment.

## BACKGROUND

Rosalind Marie Urban was pregnant with twins, in a high-risk pregnancy, when she went to the obstetrics department of the Central Kansas Medical Center for a stress test. Ms. Urban had gone in before for stress tests at the direction of her doctor, William King. This stress test was non-reactive, meaning there was no fetal movement. However, the fetal heart tones were in the 150's for each twin and Ms. Urban's vital signs were normal. The nurse who conducted the test, after consulting with a doctor, Jay Schukman, but without informing Ms. Urban of the test results, instructed Ms. Urban to come back to the Medical Center the next morning for another stress test.

Ms. Urban left the hospital at 8:00 that night and returned the next day for the repeat test. During the repeat stress test,

  (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
    ....
  (c) Restricting transfers until individual stabilized
    (1) Rule
    If an individual at a hospital has an emergency medical condition which has not been stabilized ..., the hospital may not transfer the individual unless—
    (A)(i) the individual ... after being informed ... in writing requests transfer to another medical facility,
      ....
    (iii) if a physician is not physically present in the emergency department at the time an individual is transferred, a qualified medical person ... has signed a certification ... after a physician ... countersigns the certification....

the morning nurse realized that something was wrong and called in another obstetrician/gynecologist, Joseph Gateno. Dr. Gateno ordered a biophysical profile, which revealed no movement or breathing in either fetus and the absence of fetal heart rate motion in one of the fetuses.

A Caesarian section was performed that day. One baby was delivered stillborn and the other was born with brain damage. Ms. Urban along with her husband, David B. Urban, and the surviving twin, Derreck Lee Urban, sued the Central Kansas Medical Center for violating the Emergency Medical Treatment and Active Labor Act, specifically 42 U.S.C. § 1395dd(c)(1)(A)(i) & (iii), by sending her home after the first non-reactive stress test. The couple also asserted against the Medical Center and the physicians state malpractice claims, which were abandoned by the Urbans during the pretrial stage of the case. The district court granted the Medical Center's motion for summary judgment and dismissed the § 1395dd(c) claim 834 F.Supp. 1328.

## DISCUSSION

■ We review a summary judgment order *de novo*, applying the same standards the district court would use in deciding whether to grant the motion. We review the record in the light most favorable to the non-moving parties, the Urbans, to determine if there exists a genuine issue of material fact, which would require the case to go on to trial. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Because the relevant facts of this case are not in dispute, the parties agree the Medical Center did not have actual knowledge of Ms. Urban's medical emergency, this appeal condenses to a question of law: whether § 1395dd(c) requires a hospital have actual knowledge of the medical emergency before statutory liability attaches to the hospital.

■ Under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C.

§ 1395dd, a hospital that receives Medicare payments is faced with two requirements. First, if an individual arrives at the emergency room and requests treatment, the hospital must "provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a); *Abercrombie v. Osteopathic Hosp. Founders Ass'n*, 950 F.2d 676, 680 (10th Cir.1991). Second, "[i]f an individual at a hospital has an emergency medical condition which has not been stabilized ..., the hospital may not transfer the individual unless" certain conditions are met. 42 U.S.C. § 1395dd(c)(1); *Abercrombie*, 950 F.2d at 680. In this case, the Urbans do not challenge the hospital's compliance with the first requirement of the Act. They do not allege a violation of § 1395dd(a).[2] Instead, they argue the Medical Center violated the Act by releasing Ms. Urban with an emergency medical condition without first stabilizing the condition.

A plain reading of the statute reveals actual knowledge of an unstabilized emergency medical condition as a requirement to establish liability. Subsection (c) requires the hospital to meet certain transfer conditions if the individual's emergency medical condition is not stabilized. The hospital cannot be held to stabilize an emergency situation without knowing an emergency exists. The Emergency Medical Treatment and Active Labor Act is neither a malpractice nor a negligence statute.

In *Abercrombie*, the Tenth Circuit held that plaintiffs could prevail under the Emergency Medical Treatment and Active Labor Act by showing violations of either § 1395dd(a) or § 1395dd(c); plaintiffs need not show a violation of both subsections. 950 F.2d at 680. *Abercrombie* also states "that these two requirements impose a 'strict liability' on a hospital." *Id.* at 681. *Abercrombie* relies on the predicate, in that case, that an emergency medical condition did exist. *See id.* at 680.

An emergency medical condition is defined as

**2.** Section 1395dd(a) is not relevant to this case because Ms. Urban did not go to the emergency room of the hospital. No contention is made

concerning the adequacy of the medical screening examination.

a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

    (i) placing the health of the individual ... in serious jeopardy,

    (ii) serious impairment to bodily functions, or

    (iii) serious dysfunction of any bodily organ or part....

42 U.S.C. § 1395dd(e)(1)(A); *Delaney v. Cade*, 986 F.2d 387, 392 (10th Cir.1993). For Ms. Urban an emergency medical condition had not manifested itself. She was not in pain, and she had not displayed acute symptoms of severity at the time she was sent home from the obstetrics department. A facial reading of § 1395dd(e)(1) requires some manifestation of acute symptoms so the hospital would know of the condition. *Abercrombie* did not address whether the hospital could be in violation of § 1395dd(c) if it did not have the knowledge of the emergency medical condition. *Abercrombie* shows, without discussing it, an emergency medical condition existed in that case.

The interplay between § 1395dd(c) and § 1395dd(b) further supports the requirement of actual knowledge of the emergency medical condition. The provisions of § 1395dd(c) are triggered only if § 1395dd(b)'s requirements have been met: If a hospital "determines that the individual has an emergency medical condition," under § 1395dd(b), then the hospital must comply with the requirements of § 1395dd(c). *See* 42 U.S.C. § 1395dd(b). Subsection 1395dd(c) delineates what must be done before the individual may be transferred. *See* 42 U.S.C. § 1395dd(c). Therefore, § 1395dd(c) only comes into effect if the hospital has "determined" an emergency medical condition exists pursuant to § 1395dd(b). The statute's stabilization and transfer requirements do not apply until the hospital determines the individual has an emergency medical condition.

We join the Fourth, Sixth, and D.C. Circuits in holding the plaintiff must prove the hospital had actual knowledge of the individual's unstabilized emergency medical condition to succeed with a claim under § 1395dd(c). Each of these circuits has determined the statute's "transfer requirements do not apply unless the hospital actually determines that the patient suffers from an emergency medical condition." *Baber v. Hospital Corporation of America*, 977 F.2d 872, 883 (4th Cir.1992); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C.Cir.1991); *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268–69 (6th Cir.1990).

The Urbans argue whether the Medical Center knew of the emergency is immaterial. They assert § 1395dd(c) only requires a showing that (1) the individual went to a hospital, (2) an emergency condition exists, (3) the hospital failed to stabilize the individual, and (4) the hospital transferred the individual without complying with the conditions of § 1395dd(c)(1)(A)(i-iii). The Urbans arrive at this conclusion by insisting that § 1395dd(c) must be read separately from the rest of § 1395dd. A literal reading of the language of § 1395dd(c) in isolation can lead to this conclusion. Subsection (c) states: "If an individual at a hospital has an emergency medical condition which has not been stabilized ..., the hospital may not transfer the individual...." Subsection (c) does not explicitly state the hospital must have "actual knowledge" of the emergency. However, we must read a statute as a whole to understand its context. *King v. St. Vincent's Hosp.*, 502 U.S. 215, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991). We agree with the Urbans that they need not show a violation of § 1395dd(a), emergency room screening requirement, to succeed in an action brought under § 1395dd(c). However, we do not agree that each subsection must be interpreted independently of the others. Subsection (b) is explicitly linked to subsection (c), and the application of subsection (c) depends on the language of subsection (b).

The Urbans also argue an actual knowledge requirement will lead to ludicrous results. They claim as a result of the actual knowledge requirement hospitals will deliberately fail to diagnose emergency medical conditions in an effort to avoid liability under the Emergency Medical Treatment and Ac-

tive Labor Act. We do not anticipate such a result. Subsection 1395dd(a) explicitly requires emergency rooms to perform appropriate medical screenings to determine if emergencies exist. Our interpretation of § 1395dd(c) will not defeat § 1395dd(a). Similarly our interpretation of § 1395dd(c) will not affect state malpractice laws. If doctors and hospitals violate duties under the law by acting negligently in failing to diagnose an emergency condition, they are not protected from liability due to our interpretation of this federal statute.

## CONCLUSION

We hold a plaintiff must prove as a condition to recover under 42 U.S.C. § 1395dd(c) the hospital had actual knowledge of the patient's emergency medical condition. There is no dispute as to the hospital's lack of knowledge. As such, no material facts are in dispute, and Central Kansas Medical Center is entitled to judgment as a matter of law. We **AFFIRM** the district court's order.