**Rosa LANE, personal representative of the Estate of Timothy E. Davis, Deceased, Plaintiff,**

v.

**CALHOUN–LIBERTY COUNTY HOSPITAL ASSOCIATION INC., Angel L. Rivera, M.D., and Carol A. Sutton, M.D., Defendants.**

**Civ. A. No. 94–50001/LAC.**

United States District Court, N.D. Florida, Panama Division.

March 11, 1994.

Tammy deSoto-Cicchetti, Callahan & Dobbins, Tallahassee, FL, for plaintiff.

Jeannette Andrews, Tallahassee, FL, for Calhoun–Liberty County Hosp. Ass'n Inc.

Bruce Bowman, Tallahassee, FL, for Carol A. Sutton, M.D.

C. Timothy Gray, Tallahassee, FL, for Angel L. Rivera, M.D.

## ORDER

COLLIER, District Judge.

This case comes before the Court on Defendants' motions to dismiss (doc. 12 filed in consolidated case no. 94–50001; and docs. 14, 18 and 20 in the present case) and Plaintiff's motion to amend her complaint (doc. 17). As explained below, the Court GRANTS Defendants Sutton and Rivera's motions to dismiss. The Court DENIES Defendant Calhoun County Hospital's motion to dismiss, but GRANTS the Hospital's motion to strike certain portions of the complaint. The Court also DENIES Plaintiff's motion to amend her complaint.

### Factual Background

The following facts are taken exclusively from Plaintiff's allegations in her complaint.

At approximately 5:00 pm on March 1, 1992, Timothy Davis accidently dropped 180 pounds of free weights on his abdomen while he was working out at a friend's house. Shortly thereafter, Davis was taken to emergency room of Defendant Calhoun–Liberty County Hospital Association's hospital (Calhoun Hospital or the Hospital). At that point, Davis suffered from abdominal pain and was vomiting blood. Davis also had trouble breathing.

Upon his arrival, however, employees at Calhoun Hospital refused to admit Davis. Plaintiff contends the hospital failed to "adequately screen" Davis or give him "appropriate and immediate" medical treatment. Davis left the hospital at that time, but returned again at 7:00 pm—two hours after his injury occurred. Davis' symptoms of abdominal pain, vomiting blood and breathing difficulties persisted. Plaintiff alleges hospital employees once again failed to screen Davis or admit him for treatment. Instead, hospital employees suggested Davis seek treatment on his own in Jackson County.

Acting on this advice, Davis began driving to Jackson Memorial Hospital. Before he could reach this hospital, however, his car broke down. At approximately 7:30 pm that same evening—March 1, 1992—Emergency Medical Services transported Davis by ambulance back to Calhoun Hospital's emergency

room. At this point, Defendant Angel Rivera, M.D. attended Davis. An hour and half later, Dr. Rivera discharged Davis from the hospital. Plaintiff alleges that at the time Dr. Rivera discharged Davis, the doctor had not "properly treated" Davis' condition.

At approximately 7:00 am the next morning, Davis was taken for a fourth time to Calhoun Hospital complaining of the same three conditions: abdominal pain, vomiting blood and breathing difficulties. Although Dr. Rivera was on duty at the time, he failed to examine Davis. Two hours later, Defendant Carol Sutton, M.D. examined Davis. Although Plaintiff claims Dr. Sutton failed to review Davis' chart from the prior evening, Dr. Sutton ordered certain diagnostic tests for Davis. These tests revealed he needed surgery and Dr. Sutton decided he should be transferred to Jackson Hospital for treatment. At 11:35 that morning, Davis was transferred to Jackson Hospital.

Approximately an hour later, Dr. Richard Brunner (not a party to this action), performed emergency surgery on Davis. A week later, on March 9, 1992, Davis suffered cardiac arrest resulting in an anoxic brain injury. Davis was operated on a second time two days later, but he ultimately died of his injuries on April 9, 1992.

On January 3, 1994, Plaintiff Rosa Lane [1] filed the instant action as the personal representative of Davis' estate. Plaintiffs' complaint contains seven counts [2] against three defendants—Calhoun Hospital, Dr. Rivera and Dr. Sutton. In these counts, Plaintiff asserts claims against Defendants under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, and Fla.Stat.Ann. §§ 395.1041 and 401.45. Plaintiff also asserts a claim against Calhoun Hospital under rule 10d–28.170 of the Florida Administrative Code.

All three defendants have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (See docs. 12

[filed in consolidated case no. 94–50051], 14 and 18). By an earlier order dated February 18, 1994, the Court stated its holding on Dr. Sutton's motion (see doc. 13). Since then, Calhoun Hospital and Dr. Rivera have filed their motions. In addition, Plaintiff has informed the court that in light of the Court's February 18 order, she has filed a state court action against Defendants alleging medical malpractice. Plaintiff further advises the Court that at this juncture, the only claim she intends to pursue in this action is a claim under the EMTALA against Calhoun Hospital. With this in mind, Plaintiff has moved to amend her complaint on the EMTALA claim.

In this order, the Court will address Defendants' motions to dismiss. Although the Court has already informed the parties of its holding regarding Sutton's motion, the Court will now explain that holding and rule on Dr. Rivera's motion. The Court will also address Calhoun Hospital's motion to dismiss which was not before the Court at the time of the February 18th order. Finally, the Court will rule on Plaintiff's motion to amend and Calhoun Hospital's motion to strike certain exhibits.

*I. Supplemental Jurisdiction over Plaintiffs' State Law Claims.*

■ In counts I, IV and VII, Plaintiff asserts claims against each defendant under Fla.Stat.Ann. § 395.1041 and 401.95. In count II, Plaintiff asserts a claim against Calhoun Hospital under Florida Administrative Code § 10d–28.170. These claims are coupled with claims against each defendant under the EMTALA. While the Court has original jurisdiction over the EMTALA claims pursuant to 28 U.S.C. § 1331, Plaintiff has not alleged independent grounds for jurisdiction over the claims arising under Florida law. Thus if the Court has jurisdiction over these claims, it is pursuant to the

---

1. Mother of the decedent, Timothy Davis.

2. Although the final count of Plaintiffs' complaint is titled "Count VIII," there are only seven counts in this complaint. In labeling her counts, Plaintiff skipped over a "Count VI." For the sake of clarity, the Court will refer throughout

this order and later orders to the counts as Plaintiff has labeled them in her complaint. For example, the Court will refer to the last count as "Count VIII," rather than "Count VII" which is its proper label.

Court's power to exercise "supplemental jurisdiction" over state law claims.

28 U.S.C. § 1367(a) reads:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.A. § 1367(a) (West 1993). While this provision grants federal courts jurisdiction over many pending state law claims, the statute further states:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law, ...

*Id.* at § 1367(c).

Research reveals Fla.Stat.Ann. §§ 395.-1041 and 401.45 create new statutory causes of action which are yet to be interpreted by a Florida appellate court. While the Florida statutes resemble the EMTALA and appear to target the same evil (i.e., "patient dumping" by health care facilities), Florida's statute is worded differently from its federal counterpart. For example, the EMTALA requires a hospital to provide an "appropriate medical screening examination" when a person arrives at their emergency room. 42 U.S.C.A. § 1395dd(a) (West 1993). The Florida statute on the other hand, mandates hospitals provide "emergency services and care for any emergency medical condition" under similar circumstances. Fla.Stat.Ann. § 395.1041(3)(a) (West 1993). Given the different wording of these statutes, the Court hesitates to conclude the EMTALA and the Florida statute regulate the same conduct. Moreover, the Court finds it is not the role of a federal court to blindly speculate as to the meaning of a state statute.

As a result, the Court concludes Plaintiffs' state law claims raise a novel issue of state law and therefore declines to exercise supplemental jurisdiction. *See* 28 U.S.C.A. § 1367(c). Counts I, II, IV and VII are dismissed without prejudice.

## II. Drs. Sutton and Rivera's Motions to Dismiss Pursuant to Rule 12(b)(6)

■ In her motion to dismiss, Dr. Sutton argues neither of the counts alleged against her—counts VII and VIII—states a claim for relief. Likewise, Dr. Rivera urges the dismissal Plaintiff's claims against him in counts IV and V. In counts IV and VII, Plaintiff alleges the doctors violated Fla.Stat.Ann. §§ 395.1041 and 401.45. In counts V and VIII, Plaintiff asserts claims against the doctors individually under the EMTALA. Since the Court declines to exercise jurisdiction over Plaintiffs' state law claims, the Court will only concern itself with counts V and VIII—the federal claims brought under the EMTALA.

A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty "that the plaintiff can prove no set of facts that would entitle him to relief." *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). This requires the Court to accept the allegations in the complaint as true and draw any necessary inferences in a light most favorable to the plaintiff. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 702 (11th Cir.1985).

In support of dismissing Plaintiff's EMTALA claim against her, Dr. Sutton argues the EMTALA does not allow a private cause of action against individual physicians. In his motion to dismiss, Dr. Rivera joins Dr. Sutton in this contention. The Court agrees, and therefore counts V and VIII are dismissed.

The EMTALA calls for both public and private enforcement of its provisions. Under § 1395dd(d)(1), the Secretary of Health and Human Services may seek civil monetary penalties against hospitals and physicians who violate the dictates of the EMTALA. 42 U.S.C.A. §§ 1395dd(d)(1), (3) and 1320a–7a(a) (West 1993); *Richardson v. Southwest*

*Mississippi Regional Medical Center*, 794 F.Supp. 198, 200 (S.D.Miss.1992). Notwithstanding this administrative enforcement of the EMTALA, the statute also creates a cause of action for private parties injured due to a violation of the EMTALA. More precisely, § 1395dd(d)(2)(A) states:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, an such equitable relief as is appropriate.

42 U.S.C.A. § 1395dd(d)(2)(A) (West 1993). Plaintiff reads this provision together with the rest of the statute as providing a private cause of action against individual physicians as well as hospitals.

Plaintiff's interpretation, however, is not born out in the plain language of the EMTALA. Although the EMTALA makes both hospitals and physicians liable for civil penalties, the private remedy is limited to claims against "the participating hospital." *See id.* at § 1395dd(d)(1), (2). The EMTALA's enforcement provisions make no mention of a private plaintiff's right to sue individual physicians. *See id.* Instead, the EMTALA expressly creates a private cause of action only against offending hospitals. *See id.*

At the same time, the Court is unwilling to conclude the EMTALA contains an implied cause of action for private parties against individual physicians. Here, it is notable that while Congress expressly created a private cause of action against hospitals, it did not include an analogous remedy against individual physicians. As the United States Supreme Court has stated:

> ... it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19–20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146, 154–55 (1979) (citations omitted). Reviewing Congressional acts creating private rights of action, the Court in *Lewis* further noted:

> Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.

*Lewis*, 444 U.S. at 21, 100 S.Ct. at 248 (citations omitted). In the EMTALA, Congress created a private cause of action against hospitals, but not individual physicians. If Congress had intended to create a private remedy against physicians, it knew how to do so. Here, Congress chose not to create such a remedy, and this convinces the Court the EMTALA does not allow private plaintiffs to sue individual physicians. *Richardson*, 794 F.Supp. at 201.

In her claim against the doctors, Plaintiff relies heavily on *Sorrells v. Babcock*, 733 F.Supp. 1189 (N.D.Ill.1990). The plaintiff in that case asserted claims against four attending physicians under the EMTALA. *Sorrells*, 733 F.Supp. at 1190. In denying a motion to dismiss brought by one physician, the *Sorrells* court held the EMTALA creates a private cause of action against physicians who violate the statute's provisions. *Id.* at 1194. The court cited the EMTALA's civil penalty provisions—holding physicians liable for statutory violations—as evidence the statute permits a private remedy against physicians. *Id.* at 1193. The court then explored selected excerpts of the EMTALA's legislative history and concluded Congress intended to hold physicians accountable to private plaintiffs. *See id.* at 1193–94.

Subsequent cases addressing this issue have noted the holding in *Sorrells*, but uniformly declined to follow it. *See, e.g., Delaney v. Cade*, 986 F.2d 387, 393 (10th Cir. 1993); *Baber v. Hospital Corporation of America*, 977 F.2d 872, 877–78 (4th Cir.1992); *Helton v. Phelps County Regional Medical Center*, 817 F.Supp. 789, 790 (E.D.Mo.1993); *Holcomb v. Monahan*, 807 F.Supp. 1526, 1529 (M.D.Ala.1992); *Jones v. Wake County Hospital System, Inc.*, 786 F.Supp. 538, 545 (E.D.N.C.1991). Likewise, this Court finds *Sorrells*' reasoning unconvincing. That the EMTALA holds physicians liable for civil penalties does not support the conclusion the

EMTALA permits private plaintiffs to sue physicians. *Baber,* 977 F.2d at 877; *Jones,* 786 F.Supp. at 545. Moreover, contrary to *Sorrells,* other courts reviewing the EMTALA's legislative history have concluded Congress intended to limit the private remedy to actions against hospitals. *Baber,* 977 F.2d at 877; *Richardson,* 794 F.Supp. at 201–202. On this issue, the Court adopts the historical analysis of the *Baber* and *Richardson* courts, and concludes the legislative history of the EMTALA does not support an implied private cause of action against individual physicians.

Accordingly, the Court concludes the EMTALA does not permit Plaintiff to sue Drs. Sutton and Rivera individually. Thus, the doctors' motions to dismiss counts V and VII are granted.

### III. Calhoun Hospital's Motion to Dismiss

Calhoun Hospital has filed a motion to dismiss or in the alternative strike certain exhibits proffered by Plaintiff. The Court's decision to decline jurisdiction over Plaintiff's state law claims renders moot the Hospital's challenges to counts I and II. Thus, the Court will only address the Hospital's motion to dismiss count III—Plaintiff's EMTALA claim against the Hospital.

### Pleading Intent on the Part of the Hospital

■ Initially, the Hospital contends that to state a claim under the EMTALA, Plaintiff must allege the Hospital denied Davis a screening exam and later prematurely discharged him because he was indigent. In support of this pleading requirement, the Hospital cites *Evitt v. University Heights Hospital,* 727 F.Supp. 495 (S.D.Ind.1989) and *Stewart v. Myrick,* 731 F.Supp. 433 (D.Kan. 1990). This Court, however, recently held the EMTALA does not require plaintiffs to plead they were denied a screening exam or improperly discharged for economic reasons. *Cooper v. Gulf Breeze Hospital,* 839 F.Supp. 1538, 1543–44 (N.D.Fla.1993). In *Cooper,*

this Court specifically discussed and rejected the conclusions of the courts in *Evitt* and *Myrick.*

While the legislative history of the EMTALA evinces a concern for "patient dumping," the plain language of the statute affords protection to "any individual" regardless of their ability to pay. 42 U.S.C.A. §§ 1395dd(a) and (b) (West 1993); *Cooper,* 839 F.Supp. at 1543–44. The EMTALA does not require individuals to allege a hospital denied them a screening exam or improperly transferred them because the hospital feared they could not pay their bill. *Cooper,* 839 F.Supp. at 1543–44. Since the Court finds no reason to revisit its holding in *Cooper,* it rejects this as a basis for dismissing Plaintiff's claim.

■ The Hospital next urges that even if Plaintiff does not have to allege an economic motive for its actions, Plaintiff must still allege the Hospital violated the EMTALA because of a personal characteristic of Davis—i.e., his race, social status, politics, drunkenness, etc. Here, the Hospital cites the Sixth Circuit's opinion in *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266 (6th Cir.1990) in support of reading this motive requirement into an EMTALA claim. The Court, however, does not find the EMTALA contains such a requirement and therefore declines to follow the lead of *Cleland.*

At heart, the EMTALA imposes two duties on hospitals. First, when "any individual" comes to a hospital's emergency room seeking examination and treatment, the hospital must "provide for an appropriate medical screening examination." 42 U.S.C.A. § 1395dd(a) (West 1993). Second, if the hospital determines an individual has an "emergency medical condition," the hospital must either: (1) provide further examination and treatment so as to "stabilize" the patient's condition before discharging the patient, or (2) transfer the individual to another medical facility. *Id.* at § 1395dd(b)(1). Except under certain circumstances [3], a hospital may

---

3. § 1395dd permits a hospital to transfer or discharge a patient whose condition has not stabilized when:

(1) the patient requests the transfer in writing after being informed of the hospital's obligations under § 1395dd; or
(2) a physician certifies that based upon information available at the time of the transfer, the

not transfer an individual unless their condition has stabilized. *Id.* at § 1395dd(c)(1). Here, Plaintiff alleges the Hospital failed to give Davis an "appropriate" screening and later discharged him before his condition had stabilized.

As the Sixth Circuit noted in *Cleland,* "appropriate" is a slippery word to define. *Cleland,* 917 F.2d at 271. While the Sixth Circuit refused to read this term as referring to the adequacy of any treatment under state malpractice law, it concluded "appropriate" refers to "the motives with which the hospital acts." *Id.* at 272. The court reasoned:

> A hospital that provides a substandard (by its standards) or nonexistent medical screening for any reason (including, without limitation, race, sex, politics, occupation, education, personal prejudice, drunkenness, spite, etc.) may be liable under [the EMTALA].

*Id.* The court cautioned that while patient indigence may be what motivates many hospitals to violate the EMTALA, this is not the only intent actionable under the statute. *Id.* Instead, so long as a plaintiff can allege one of the plaintiff's personal characteristics—indigence or otherwise—motivated the hospital to violate the EMTALA, the plaintiff has stated a claim under this statute. *See id.*

■ Unlike the Sixth Circuit, however, this Court does not find a hospital's motive to be relevant to bringing claims under the EMTALA. As noted earlier, the statute's provisions apply to "any individual" who seeks emergency care. *See* 42 U.S.C.A. § 1395dd(a) and (b). On its face, the statute does not qualify a person's right to sue based on the hospital's motivation in denying that person a screening examination. *See id.* at § 1395dd(a), (b) and (d)(2)(A). Nor does it link a patient's right to have their condition stabilized before transfer or discharge to the hospital's intent. *See id.* at § 1395dd(b) and (c). While the statute does not expressly define an "appropriate medical screening examination," *Cleland's* conclusion this term

incorporates a hospital's motivation strains any common sense meaning of "appropriate."

■ Instead, the Court agrees with District of Columbia Circuit's reading of what the EMTALA means by an "appropriate" medical screening. In *Gatewood v. Washington Healthcare Co.,* 933 F.2d 1037 (D.C.Cir.1991), the circuit court reasoned:

> [A] hospital fulfills the "appropriate medical screening" requirement when it conforms in its treatment of a particular patient to its standard screening procedures. By the same token, any departure from standard screening procedures constitutes inappropriate screening in violation of the [EMTALA].

*Gatewood,* 933 F.2d at 1041. Noting its disagreement with the Sixth Circuit, the *Gatewood* court concluded the motive for a hospital's departure from its procedures is irrelevant under this analysis. *Id.* at 1041 n. 3. Under this definition, § 1395dd(a) "entitles an individual to the standard screening procedure accorded by that hospital to other patients." *Jones,* 786 F.Supp. at 544 (citing with approval the reasoning of *Gatewood*); *see also Deberry v. Sherman Hosp. Ass'n,* 769 F.Supp. 1030, 1034 (N.D.Ill.1991) (declining to follow *Cleland* in reaching the conclusion the EMTALA does not require plaintiffs to plead a motive on the part of a hospital). Since the Court finds Plaintiff does not have to plead a specific intent on the part of the Calhoun Hospital, the Court rejects this as a basis for dismissing Plaintiff's claim.

*Alleging Negligence in an EMTALA Claim*

■ While the term "appropriate" as used in § 1395dd(a) and (b) does not refer to a hospital's intent, neither does it serve as a vehicle to import state malpractice law into the EMTALA. In paragraphs 39 and 40 of her EMTALA claim, Plaintiff refers to the "negligence" of Calhoun Hospital and alleges the Hospital is "vicariously liable" for the negligence of its employees. While Plaintiff's reason for including these allegations is unclear, it would appear she is alleging the

medical benefits of treatment at another facility outweigh the increased risks to the individual (and, in the case of labor, the unborn baby); and

(3) the transfer is an "appropriate transfer" under the standards of § 1395dd(c)(2).

42 U.S.C.A. § 1395dd(c)(1).

Hospital's negligence—an issue of Florida malpractice law—is a basis for relief under the EMTALA. The Hospital argues that since the EMTALA does not incorporate state medical malpractice law, Plaintiff has failed to state a claim under the EMTALA.

While the EMTALA creates a private cause of action under federal law, the "patient dumping" provisions of the statute were not intended to supplant state medical malpractice remedies. *Cooper*, 839 F.Supp. at 1541; *see Collins v. DePaul Hosp.*, 963 F.2d 303, 307 (10th Cir.1992); *Gatewood*, 933 F.2d at 1041. Rather, the EMTALA and state medical malpractice laws provide distinct remedies for different wrongs. *Cooper*, 839 F.Supp. at 1541; *see Abercrombie v. Osteopathic Hosp. Founders Ass'n*, 950 F.2d 676, 681 (10th Cir.1991); *Stevison v. Enid Health Systems, Inc.*, 920 F.2d 710, 713 (10th Cir. 1990); *Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir.1990).

As noted earlier, the inquiry in a claim based on the EMTALA's screening requirement is whether the hospital conformed to "its standard screening procedures" when examining the plaintiff. *Gatewood*, 933 F.2d at 1041. Here, the issue is not the adequacy of the hospital's screening procedures. *Jones*, 786 F.Supp. at 544. Instead, if a hospital acts consistently with its standard screening procedures, it incurs no liability under the EMTALA even if those procedures are deficient under state medical malpractice law. *Id.* Likewise, the EMTALA's requirement that hospitals stabilize a patient prior to discharge or transfer does not incorporate state malpractice law. *See* 42 U.S.C.A.

§ 1395dd(b), (c) and (f) (West 1993). Whether a hospital's treatment of an emergency medical condition or the decision to discharge amounts to malpractice is irrelevant under the EMTALA.

Hence, Plaintiff's references to the Hospital's "negligence" and its "vicarious liability" for the acts of its employees are out of place in her EMTALA claim. Under the circumstances, the Hospital's negligence—if there is any—can only be determined by reference to Florida malpractice law. While the Hospital suggests this is grounds for dismissing count III, the Court will instead treat the Hospital's motion as a motion to strike. Accordingly, all references to negligence and vicarious liability in paragraphs 39 and 40 are STRICKEN from the complaint.

### Immunity Under Florida's Good Samaritan Act

Related to the issue of the EMTALA's relationship to state malpractice law is the question of whether Florida's Good Samaritan Act immunizes the Hospital from liability under the federal statute. The Hospital contends it enjoys immunity under this state statute "for all acts of negligence alleged against it in Plaintiff's complaint...." The Hospital thus urges this as a basis for dismissing Plaintiff's claim.

The Court, however, does not find the Good Samaritan Act to be applicable here. Though there is a dearth of case law interpreting the Florida statute [4], it appears this act is designed to grant immunity for acts amounting to simple negligence. *See* Fla. Stat.Ann § 768.13(2)(a) and (b).[5] Yet, as dis-

---

4. The Court's research revealed only five Florida appellate decisions addressing the provisions of the Good Samaritan Act. Unfortunately, none of these cases lend any assistance to the Court in determining the issue raised by the Hospital in this case.

5. Fla.Stat.Ann. § 768.13(2)(b)(1), which the Hospital cites as relevant here, states part:

Any hospital licensed under chapter 395, any employee of such hospital working in a clinical area within the facility and providing patient care, and any person licensed to practice medicine who in good faith renders medical care or treatment necessitated by a sudden, unexpected situation or occurrence resulting in a serious medical condition demanding immediate medical attention, for which the patient enters the hospital through its emergency room or trauma center, shall not be held liable *for any civil damages as a result of such medical care or treatment unless such damages result from providing, or failing to provide, medical care or treatment under circumstances demonstrating a reckless disregard for the consequences so as to affect the life or health of another.*

(emphasis added). The Court concludes the highlighted portion of this statute in effect raises the degree of fault a plaintiff must establish from simple negligence to something approximating "gross" negligence in cases where this statute applies.

cussed above, the EMTALA neither incorporates nor relies upon state malpractice law. Indeed, the EMTALA can be described as making hospitals "strictly liable" for failing to screen individuals or discharging patients before their condition has stabilized. The Hospital's negligence—if there was any—is simply not an issue in Plaintiff's EMTALA claim.[6] Since Plaintiff's EMTALA claim does not rely upon the Hospital's negligence, the Good Samaritan Act does not afford the Hospital immunity from liability under the EMTALA.[7]

### Damages Under the EMTALA—Florida's Wrongful Death Act

■ In a final salvo against Plaintiff's EMTALA claim, the Hospital argues Plaintiff has demanded damages she cannot properly recover under the EMTALA and Florida law.[8] In her prayer for relief, Plaintiff includes a claim for damages pursuant to the EMTALA's civil penalty provisions. See 42 U.S.C.A. § 1395dd(d)(1)(A) and (B) (West 1993). Furthermore, in paragraph 40, Plaintiff alleges Davis personally:

> sustained substantial mental and physical pain and suffering, loss of and injury to important bodily functions, the inability to lead a normal life, medical expenses, and lost earnings from the date of his injury to his death.

Finally, Plaintiff seeks damages for her own pain and suffering as a result of her son's death.

The Hospital disputes Plaintiff's right to recover these damages. To begin with, the Hospital contends Plaintiff cannot collect damages pursuant to the EMTALA's civil penalty provisions because these provisions

are enforced by the Secretary of Health and Human Services—not private plaintiffs. The Hospital further posits Plaintiff cannot recover damages for Davis' personal injuries because any remedy for personal injuries to Davis abated with his death pursuant to Florida law. At the same time, the Hospital argues Florida law does not permit Plaintiff to recover damages for her own injuries.

■ The Court agrees that Plaintiff has no right to recover damages under the EMTALA's civil penalty provisions. As noted earlier, the EMTALA provides for two avenues of enforcement: (1) civil monetary penalties against offending hospitals and physicians; and (2) a private cause of action against offending hospitals. See 42 U.S.C.A. § 1395dd(d)(1), (2) (West 1993). While Plaintiff may bring suit against the Hospital pursuant to the private remedy allowed in subsection (d)(2)(A), she has no authority to collect the civil monetary penalties provided for in subsection (d)(1). Instead, only the federal government—or more precisely, the Secretary of Health and Human Services—may enforce these penalties. See id. at §§ 1395dd(d)(1), (3) and 1320a–7a(a); Richardson, 794 F.Supp. at 200. Thus, Plaintiff's prayer for damages pursuant to § 1395dd(d)(1)(A) and (B) in count III is STRICKEN from the complaint.

■ Likewise, the Court STRIKES the above-quoted allegations in paragraph 40 regarding Davis' personal injuries. Under the EMTALA, private plaintiffs may recover "those damages available for personal injury under the law of the State in which the hospital is located...." 42 U.S.C.A. § 1395dd(d)(2)(A) (West 1993). Thus, sub-

---

6. As explained earlier, this is basis for striking all references to "negligence" in Plaintiff's EMTALA claim.

7. While the Court concludes this is sufficient reason to deny the Hospital's motion to dismiss, the Court also notes a possible alternative ground for this holding. Even if the Good Samaritan Act immunizes conduct beyond acts of simple negligence, it is not clear a state statute can insulate the Hospital from liability under the EMTALA. It is questionable whether the Supremacy Clause of the U.S. Constitution would permit Florida's Good Samaritan Act to preempt the Hospital's liability under the federal statute.

8. Again, the Hospital does not specify whether it urges this as a grounds for dismissal of count III. In her response, Plaintiff urges the Court not consider this issue as it is not dispositive of the Hospital's liability under the EMTALA and therefore should not be addressed in a motion to dismiss. While the Court agrees with Plaintiff that the Hospital's challenges to her damage claims do not support dismissal under Rule 12(b)(6), the Court will treat the Hospital's motion on this issue as a motion to strike. In this form, it is proper for the Court to address the Hospital's arguments on damages.

stantive Florida law on personal injury and wrongful death governs the award of damages under the EMTALA. *See Owens v. Nacogdoches County Hospital Dist.,* 741 F.Supp. 1269, 1280 (E.D.Tex.1990). Plaintiff implicitly acknowledges this in her complaint as she seeks damages pursuant to the Florida Wrongful Death Act in her prayer for relief on her EMTALA claim.

> Under Florida's Wrongful Death Act, [w]hen a personal injury to the decedent results in his death, no action for personal injury shall survive, and any such action pending at the time of death shall abate.

Fla.Stat.Ann. § 768.20 (West 1986). Thus, under Florida law, any claim Davis had for damages due to his personal injuries abated at his death and therefore may not be pursued by his estate. *Id.; Taylor v. Orlando Clinic,* 555 So.2d 876, 878–79 (Fla. 5th Dist. Ct.App.1989), *rev. denied,* 567 So.2d 435 (Fla.), and *rev. denied,* 567 So.2d 436 (Fla. 1990). Instead, in her claim under the EMTALA, Plaintiff may recover those damages recoverable by a decedent's survivors under Fla.Stat.Ann. § 768.20. *See Martin v. United Security Serv. Inc.,* 314 So.2d 765, 770 (Fla.1975).

In her response, Plaintiff notes the allegations in paragraph 40 regarding Davis' personal injuries are merely factual allegations that are not included in her prayer for relief. Implicitly, Plaintiff concedes she is not seeking damages for Davis' personal injuries. Given that Plaintiff cannot recover damages for Davis' injuries, the Court finds no reason for Plaintiff to allege facts regarding these injuries. Elsewhere in the complaint, Plaintiff sufficiently alleges the Hospital's conduct resulted in Davis' death thereby stating the Hospital's conduct "harmed" Davis within the meaning of the EMTALA. To allege Davis' injuries within the EMTALA count is at best redundant and at worse an attempt to recover damages Plaintiff may not recover under the EMTALA. Thus, these allegations should be stricken from the complaint.

On the other hand, the Court concludes Florida law permits Plaintiff to recover damages for her own pain and suffering resulting from her son's death. The Hospital argues the Florida Wrongful Death Act only permits Plaintiff to recover damages if her son was not survived by anyone. As Plaintiff alleges Davis was survived by two minor children, the Hospital contends Plaintiff may not recover damages.

The Hospital would be correct if Davis was an "adult" at the time of his death. *See* Fla.Stat.Ann. § 768.21(4). The Florida Wrongful Death Act, however, permits the parents of the decedent to recover—without restriction—damages for their pain and suffering if the decedent was a "minor child" at the time of death. *Id.* The Act further defines a "minor child" as children under 25 years of age. *Id.* at § 768.18(2). Although Plaintiff has not alleged her son's age at the time of his death, in her brief she claims Davis was under 25 when he died. Since the Hospital does not contest this statement and the Court has no basis to doubt Plaintiff's claim, the Court at this time refuses to strike Plaintiff's prayer for damages she suffered as a result of her son's death.

In sum, the Court DENIES the Hospital's motion to dismiss in its entirety Plaintiffs' EMTALA claim. The Court, however, STRIKES Plaintiffs' allegations of negligence and vicarious liability in paragraphs 39 and 40 of the Complaint. The Court further STRIKES Plaintiff's prayer for damages under 42 U.S.C. § 1395dd(d)(1) and Plaintiff's allegations regarding Davis' personal injuries in paragraph 40.

### IV. Calhoun Hospital's Motion to Strike and Plaintiff's Motion to Amend Complaint

Since the Court has denied Calhoun Hospital's motion to dismiss, the Hospital seeks as an alternative to strike certain exhibits Plaintiff attached to her original complaint. Plaintiff on the other hand, seeks to amend her complaint in order to plead "intent" on the part of the Hospital in her EMTALA claim.

Initially, the Court DENIES Plaintiff's motion to amend her complaint. Plaintiff's motion and the proposed amended complaint appear to respond to the Hospital's argument that a plaintiff must demonstrate a particular

motive on the part of the hospital to prove an EMTALA claim. As explained earlier, however, the Court rejects the Hospital's argument on this issue. Since the Court finds the Hospital's motivation for its conduct towards Davis is irrelevant under the EMTALA, Plaintiff's proposed amendments to her complaint are meaningless and could only confuse the issues in this case. Thus the Court denies Plaintiff's motion to amend at this time.[9]

As for the Hospital's motion to strike, the Court concludes this should be granted. In Exhibit "B" to her complaint, Plaintiff includes copies of letters she sent to Defendants and statements from another physician concluding there is a basis for finding Defendants committed malpractice. These documents were apparently generated pursuant the pre-suit procedural requirements of Chapter 766 of the Florida Statutes. This statute governs the prosecution of medical malpractice actions in Florida. Calhoun Hospital argues Fla.Stat.Ann. § 766.106(5) insulates the documents in Plaintiff's exhibit "B" from discovery and prevents them from being used at trial. Plaintiff responds she only included these documents to demonstrate she has satisfied the pre-suit requirements for bringing a medical malpractice action against Defendants.

This case, however, concerns a claim under the EMTALA—not Florida medical malpractice law. Whether Plaintiff has conformed to the pre-suit requirements of Chapter 766 is irrelevant to Plaintiff's right to prosecute this claim. Since these documents are superfluous to Plaintiff's case, the Court finds the Hospital's motion to strike should be granted. At this time, however, the Court makes no determination as to whether these documents are "privileged" and hence undiscoverable under Rule 26 of the Federal Rules of Civil Procedure.

*Summary*

The holdings in this order can be summarized as follows:

1. The Court declines to exercise jurisdiction over counts I, II, IV and VII, and therefore these counts are DISMISSED without prejudice.

2. Drs. Sutton and Rivera's motions to dismiss V and VIII are (doc 12 filed in consolidated case no. 94–50001; docs. 18 and 20 in the present case) GRANTED. These counts are DISMISSED with prejudice.

3. Calhoun Hospital's motion to dismiss count III in its entirety (doc. 14) is DENIED. The Court, however, STRIKES the following allegations of Plaintiff's complaint:

(A) All references to "negligence" and "vicarious liability" in paragraphs 39 and 40;

(B) Plaintiff's prayer for damages under 42 U.S.C. § 1395dd(d)(1)(A) and (B); and

(C) Plaintiff's allegations of personal injuries to Timothy E. Davis in paragraph 40.

4. Calhoun Hospital's alternative motion to strike Exhibit "B" of Plaintiff's complaint (doc. 14) is GRANTED.

5. Plaintiff's motion to amend her complaint (doc. 17) is DENIED.

---

9. The Court also notes Plaintiff's proposed amended complaint retains claims against Drs. Sutton and Rivera as well as state law claims against all three Defendants. Since the Court has dismissed these claims from the case, Plaintiff's proposed amended complaint improperly asserts claims she cannot prosecute. At this point, the only claim remaining in this case is Plaintiff's claim against the Hospital under the EMTALA. While Plaintiff may be permitted to amend her complaint to refine this claim, she will not be allowed to re-assert claims dismissed from this case.